DAVID D. HARVEY *et al.*, Appellants, *v.* ISAAC SULLENS *et al.*, Respondents.

1. *Will, when prepared by devisee, looked on with suspicion — Presumption against its validity.*—Where one standing in relation of confidence to a testator who is old and *in extremis*, prepares a will in his own favor, the law regards the transaction with great suspicion. The clearest evidence is required that there was no fraud, influence, or mistake. The presumption is against the propriety of the transaction; and the *onus* of establishing the devise to have been voluntary and well understood rests on the party claim-

ing; and this in addition to the evidence to be derived from the execution of the will conveying or devising the property.

2. *Wills—Persons incapable of transacting ordinary business, incapable of making a will.— Semble,* that as a general rule, where deceased was, at the time of executing his will, old and infirm in body and feeble and childish in mind, and so incapable of transacting his ordinary business, he has not sufficient capacity to make a will.

.3. *Wills—Undue influence.—*In suit to test the validity of a will, where the evidence shows that the will would not have been executed by deceased but for the influence exercised over his mind and will, the jury should find that the will was procured by undue influence, and was not his last will.

*Appeal from St. Louis Circuit Court.*

*Geo. P. Strong,* for appellants.

A gift to an agent will be upheld if intelligently and freely made. (Nesbit v. Lockman, 34 N. Y. 167; same principle in Harris v. Tremenheere, 15 Ves. Ch. 38, 39.) The most that can be claimed from the authorities is that when a confidential relation exists between the testator and beneficiary under the will, the *onus* of proving that the will was intelligently and freely made, rests upon the party claiming under it. (Kinne v. Kinne, 9 Conn. 102; St. Leger's Appeal, 34 Conn. 434, 442.)

*T. G. C. & G. W. Davis,* for respondents.

I. If an attorney, trustee, or agent of a testator, writes his will while the relation subsists and takes a benefit under the will, the law presumes undue influence, and the courts require a clear preponderance of evidence that " everything connected with the making and execution of the instrument was free from impropriety and unfairness," and also " that juries must be satisfied that the relation had no undue or improper influence over the mind of the testator, and did not induce him to make a different disposition of his estate, or any portion of it, from what he otherwise would have done." (St. Leger's Appeal, 34 Conn. 450; Garvin's Adm'r v. Williams, 44 Mo. 465; Waterson v. Waterson, 1 Head, 1; Wilson v. Moran, 3 Bradf. Sur. 172.)

II. The fact that one makes a will *in extremis* in favor of those around him, and makes no provision, or an inadequate one,

for his children, is entitled to great consideration as evidence of fraud. (Goble v. Grant, 2 Green's Ch. 629; 1 Redf. on Wills, 510, 515. 521.) The testatrix's will is clearly inofficious, which alone is sufficient to excite apprehension of undue influence at the very least. (1 Redf. on Wills, 137–8.)

III. Where a devisee writes or procures another to write a will, it must be proved that the intention to give originated with the testator, and not with the devisee or drawer. (3 White & Tud. Lead. Cas. 141; 34 Conn. 450; 3 Bradf. Sur. 507; *id.* 185; Maury v. Sibler, 2 Bradf. Sur. 134–51; Converse v. Converse, 21 Verm. 168; Waterson v. Waterson, 1 Head, 1.)

WAGNER, Judge, delivered the opinion of the court

This case is brought here by appeal to review a judgment of reversal rendered in the general term of the St. Louis Circuit Court. The proceeding was commenced under the statute to set aside the will of Elizabeth Sip, which was admitted to probate in St. Louis county on the first day of December, 1864. The will bears date the 24th day of November, 1864, and devises to Sullens all the real estate of which the testatrix died seized, and bequeaths to five grandchildren and one great-grandchild small bequests — $100 to each of her granddaughters, and $100 and her clothes to her sister, Mrs. Maria Longworth, for " her kindness to the testatrix in her last sickness," and also a bed to a girl of the name of Pritchett, who was a servant in the house of the testatrix, and $50 each to her grandsons, and $50 to her great-grandson. Sullens, the devisee, wrote the will, is made executor, and gets about five-sixths of the whole estate.

Upon the trial in the court below, certain issues were framed and submitted to the jury, who found in favor of the will, and judgment was rendered accordingly, which was reversed in general term. The material question raised is the action of the court on the trial in refusing certain instructions asked by the plaintiffs.

The petition proceeds upon two grounds: first, that the testatrix was not of sound mind when the will was executed; and, second, that the defendant, Sullens, procured it by fraud and undue influence.

Without undertaking to go into any minute detail of the evidence, the substantial facts appear to be these: The testatrix, Mrs. Sip, was an old lady about 73 years of age ; kept house and resided on her farm. The witnesses all agree that, though uneducated, she possessed a strong mind and had good business capacity, but in the latter part of her life she became quite childish and irritable. Her immediate relations, grandchildren and great-grandchildren, and three sisters, were all poor, and there does not seem to have existed any particular enmity or unfriendliness between them. Sullens, the principal devisee and executor, was an entire stranger in blood to the testatrix, was her near neighbor, was on terms of the utmost intimacy with her, belonged to the same church, and occasionally took her to meeting in his wagon. That he had acquired her complete confidence is conclusively shown. The testatrix had made two wills several years previous to the one now in controversy, and it seems that Sullens wrote them both ; but what disposition she made of her property does not appear.

In her last illness, when in fact she was *in extremis*, all hopes of recovery having vanished, Sullens, who was always attentive, is found at her bedside, conversing with her in so low a tone of voice that her sister, Mrs. Longworth, although but a few feet distant, could not understand anything that was said. A memorandum was then taken, and in the evening Sullens came back with the will written by himself. On his way to the house of the testatrix, he met a man by the name of Green, almost a stranger, and requested him to return and witness the will. Dr. Williams, a brother-in-law of Sullens, was already in the house. Sullens then asked all the household and those in attendance, including Mrs. Longworth, the sister, to retire from the room, which they did, leaving him, the testatrix and Dr. Williams alone in the room. It then appears the will was read to her, after which Green was beckoned by Sullens to come in, when, with the assistance of Williams, she made her mark and acknowledged in the presence of those three that it was her last will, and expired in three or four days thereafter. At the time of the execution of the will, Sullens enjoined secrecy on the witnesses, and requested

them to say nothing about it during the life of the testatrix, if she died in her then present illness.

An analogous question to the one here presented was discussed with some fullness by this court at the last October term, in the case of Garvin's Administrator v. Williams *et al.*, 44 Mo. 465. It was there attempted to be shown with what distrust and suspicion the law looks upon all transactions where persons occupying a special or confidential relation seek to obtain an advantage inconsistent with their position. The general principles therein laid down need not be here reiterated, and we shall therefore confine this examination to a more exact review of the question raised and directly involved.

It is within the experience and observation of every one that old persons *in extremis* may be easily imposed upon by those in whom they confide. Where, therefore, a party standing in this relation to such a testator prepares a will in his own favor, it can not but excite suspicion, and create in the minds of those who are called upon to pronounce on it a desire to have other evidence than proof of the execution of the instrument and the testable capacity of the deceased. Where a person is so sick, worn out, and enfeebled that he is a mere passive instrument in the hands of those who produce the will, or where he allows others to control and dispose of his estate in order to escape their offensive dictation and annoyances, it is evident such a will ought not to be permitted to stand; and if the person in whose favor or through whose influence the will is made, either for his own benefit or that of others, is conscious, as an ordinary person will be presumed to be conscious, that an unjust result was being obtained in having the will made as it was, and such result is attained through the agency of other minds than that of the testator, the will can not be maintained. (See Gilbreath v. Gilbreath, 4 Jones' Eq., 142; Dean v. Negley, 41 Penn. St. 312; Floyd v. Floyd, 3 Strob. 44; Woodward v. Jones, *id.* 552; Means v. Means, 5 Strob. 167.)

In Barry v. Butlin, 1 Curteis' Ecc. 637, Baron Parke, in delivering the opinion of the court, says: "The rules of law, according to which cases of this nature are to be decided, are

two: the first, that the *onus probandi* lies in every case upon the party propounding a will, and he must satisfy the conscience of the court that the instrument so propounded is the last will of a free and capable testator. The second is that if a party writes or prepares a will, under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court, and calls upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased."

In the case of Sears v. Shafer, 2 Seld. 268, the rule is thus stated: "A court of equity interposes its benign jurisdiction to set aside instruments executed between persons standing in the relation of parent and child, guardian and ward, physician and patient, solicitor and client, and in various other relations, in which one party is so situated as to exercise a controlling influence over the will and conduct and interests of another. In some cases undue influence will be inferred from the nature of the transaction alone; in others, from the nature of the transaction and the exercise of occasional or habitual influence."

It is certain that, in a case like the present one, the law regards the transaction with great suspicion. The clearest evidence is required that there was no fraud, influence, or mistake. The presumption is against the propriety of the transaction, and the *onus* of establishing the devise to have been voluntary and well understood rests upon the party claiming; and this in addition to the evidence to be derived from the execution of the will conveying or devising the property. From the very nature of the transaction, undue influence is presumed, and the absence of it must be shown by the party sustaining the devise; but the presumption is one of fact, and not of law, and may be rebutted by proper evidence.

The gross inequality exhibited by the testatrix in almost totally disinheriting those who had strong claims upon her bounty, and willing nearly all her property to an entire stranger in blood, is suggestive of unfairness, and requires satisfactory explanation.

That she had the power to so dispose of her estate is undoubted, but its unreasonableness requires the clearest evidence that it was the deliberate offspring of her own unbiased mind, and flowed from a free and uninfluenced volition.

We will now briefly advert to the instructions which the court refused to give, and which refusal is assigned as error. The first and second, in the shape in which they were drawn, were, I think, well enough refused. The third asked the court to charge the jury that if they believed from the evidence in the cause that Isaac Sullens was the principal devisee named in the paper writing propounded as the last will and testament of Elizabeth Sip, deceased, and that said Sullens wrote the same himself, and procured a kinsman of his to witness the same, and caused the relatives and friends of the deceased to leave the room while he and his said kinsman read, or pretended to read, the same to the said Elizabeth Sip, such facts and conduct on the part of the said Sullens were evidence of fraud and undue influence on the part of Sullens in procuring the said Elizabeth to make the paper writing as her will.

Perhaps the instruction is rather too broadly stated in declaring absolutely that the acts enumerated are evidence of fraud and undue influence, though I think they were proper to be considered by the jury, and from which they might deduce or infer undue influence or fraud, and with this modification it ought to be given. The fourth request or charge asked was to the effect that if the jury believed from the evidence that Elizabeth Sip, deceased, was, at the time of putting her mark to the paper writing propounded by the defendant, .Sullens, old and infirm in body and feeble and childish in mind, and so incapable of transacting her ordinary business, then she had not sufficient capacity to make a will.

In all cases, as an abstract proposition of law, this instruction would not be quite accurate. Great contrariety exists in the adjudication as to what is necessary or sufficient to constitute testable capacity. In England, in all cases where the person is regarded as a fit subject of a commission of lunacy, he is *prima facie* incompetent to execute a will; and Lord Eldon, in Sher-

wood v. Sanderson, 19 Ves. 280, thus states the rule: "It must appear that the object of the commission is of unsound mind and incapable of managing his affairs." And in cases in this country it was said that if one be able to transact the ordinary affairs of life, he may, of course, execute a valid will. (Tomkins v. Tomkins, 1 Bailey, 92; Coleman v. Robertson, 17 Ala. 84.) But this criterion can not be regarded as a test in every particular case. However, I am inclined to the opinion that, under the circumstances here presented, the instruction was correct, and should have been given. The fifth instruction told the jury that if they believed, from the evidence in the cause, that the defendant, Sullens, was the principal devisee in the paper propounded by him as the last will and testament of Elizabeth Sip; that he wrote it himself, requested the subscribing witnesses to subscribe their names to it as witnesses, and further requested one of said subscribing witnesses, who was the only witness that knew anything about the contents of said paper, to keep it a secret until after the death of Mrs. Sip, then they were warranted in considering such evidence as tending to prove that Sullens procured the said Sip, by fraud and undue influence, to sign her mark to the said paper.

The instruction is unexceptionable, and its merits have been sufficiently discussed in a prior part of this opinion. The sixth instruction asked told the jury that undue influence was alone sufficient, if proved to their satisfaction, to impeach and set aside a will under it; and that, as a matter of law, if they were satisfied from the evidence, when taken as a whole, that the paper propounded by Sullens would not have been made by the said Sip and signed with her mark as her last will and testament but for the influence exercised over her mind and will by Sullens, then they should find that it was procured from the said Sip by undue influence, and that the same was not her last will. The seventh instruction told the jury that if they found from the evidence in the cause that the testatrix, Sip, signed the paper writing propounded as her last will and testament, and that she was coerced to do so by force, fraud, or deceit practiced upon her by Sullens and another or others in his interest and acting at his request,

then the paper writing was not the last will and testament of the deceased Sip.

We see no valid objection to either of the foregoing instructions, and think they should have been given.

For the error in refusing the instructions, we are of the opinion that the judgment of the general term was correct, and it will therefore be affirmed and the cause remanded for a new trial in conformity with this opinion. The other judges concur.