CYNTHIA A. GREENE *et al.*

*v.*

HORATIO R. GREENE *et al.*

*Filed at Springfield, April 3, 1893.*

1. WILLS—*test of mental capacity to make a will—former decision.* A person who has sufficient mental capacity to transact ordinary business is presumed to be capable of making a valid testamentary disposition of his property. The degree of mentality required in the making of a valid will is no greater than that exhibited in such ordinary affairs. It therefore logically follows that he who has conducted himself according to the standards observed by the mass of the people in such affairs is capable of making a will; but it does not necessarily follow that the converse of the proposition must also be logical or true. The case of *Keithley* v. *Stafford*, 126 Ill. 507, in so far as it is in conflict with this holding, is not to be regarded as authority.

2. As it requires no greater capacity to make a testamentary disposition of property than to transact the ordinary business of life, such as buying and selling property, settling accounts, collecting and paying out money and the like transactions, it follows that if the testator is mentally capable of transacting such business, he is capable of making a valid will.

3. The rule seems to be that one may be capable of making a will and yet be incapable of disposing of his property by contract, or of managing his estate. He may be capable of making a will when his property is small and the distribution of it simple, and at the same time incapable of making disposition of considerable estate, where the prop-

erty is involved and the disposition sought to be made is intricate and complicated.

4. On the contest of a will the court, at the instance of the contestants, instructed the jury to the effect, that if they believed from the evidence that during the summer or fall of 1886 the testator had become "so enfeebled in mind as to be incapable of acting rationally in the ordinary affairs of life," and "incapable of rationally transacting ordinary business affairs to which he had theretofore been accustomed," and "to such an extent that he could not remember from day to day, or from hour to hour, what he said or done," or intended to say or do, and "that his mental faculties had become so impaired that it would be unsafe to entrust him in the discharge of the simple affairs of life," and "that his memory had so far failed that he could not remember his relation to others," and that such mental condition had continued to the execution of the paper purporting to be his will, then the jury should find that he was not of sound mind and memory: *Held*, that the instruction was not subject to the objection of giving undue prominence to certain of the facts, and that while subject to criticism in attempting to illustrate the extent in which the loss of memory, etc., would destroy mental capacity, yet that it stated the law with substantial accuracy when taken as a whole.

5. On the contest of a will, on the one side the jury were told that if the testator at the time of the execution of the will was "able to understand and reasonably transact the ordinary business of life," he must be held capable of making a will; and on the other side they were told that, "if he was incapable of rationally transacting the ordinary business affairs of life with which he had been formerly familiar," then he was incapable of executing his will: *Held*, that there was no conflict between the instructions.

6. On the contest of a will the court instructed the jury, that "if the evidence shows that before the execution of the said paper his mind and memory had, from any cause, become so impaired as that he was, by reason thereof, at the time of executing the will, incapable of rationally transacting the ordinary business affairs of life with which he had formerly been familiar, then he is said in law to have been of unsound mind and memory": *Held*, that the instruction was erroneous, as applied to cases of the contest of wills, but in this case the error was held not prejudicial, as the evidence failed to show any transaction proved which could have induced the jury to require a higher degree of capacity than a simple understanding of the details of the business in which the testator was engaged at the time of making the will.

7. SAME—*evidence as to mental capacity before and after executing.* On the contest of a will on the ground of mental incapacity, it is the duty of the jury to consider all of the evidence showing the acts and declarations of the testator, both before and after the "day" of the execution of the will. But it is equally proper, and perhaps more highly impor-

tant, that they shall consider evidence of his condition upon that day. An instruction that might be construed as excluding evidence of what occurred on that day may be cured by others directing the jury to consider all the evidence.

8. SAME—*attestation in the presence of testator.* On the contest of a will there is no error in an instruction to the jury for the contestants, which requires that the subscribing witnesses shall attest the will in the "personal and actual presence" of the testator. The statute requires the attestation to be in the presence of the testator, and it can not be other than in his actual and personal presence.

9. APPEALS AND WRITS OF ERROR—*decree affirmed unless palpably against the evidence.* On bill to contest the validity of a will, if the jury are fairly and correctly directed in their investigation, their finding of fact approved by the chancellor must stand, unless this court can see that the verdict is palpably against the preponderance of the evidence.

10. ERROR WILL NOT ALWAYS REVERSE—*party can not complain of error committed at his request.* Where the court on the trial of a contest of a will on the grounds of undue influence and want of sufficient capacity, might, if asked, have instructed that there was no evidence to sustain the allegation of undue influence, yet if the court submits that question to the jury at the instance of both parties, the proponents of the will can not complain of the giving of an instruction asked by the contestants which contains a correct principle of law, on the ground the jury might conclude, from the fact it was given, that the court considered there was evidence on which to base it. A party can not complain of an error committed at his own instance.

11. SAME—*harmless error.* If upon the consideration of the whole case it is apparent that an instruction could have worked no injury, the giving of it, though erroneous, will constitute no ground for a reversal of the decree or judgment.

APPEAL from the Circuit Court of Morgan County; the Hon. C. EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for the appellants:

By instruction four, the court instructed the jury, that if they believe from the evidence that the execution of the will was procured by the undue influence of the parties named, or either of them, they should find against the validity of the will. This was calculated to mislead, for the reason that the jury might infer that the court held there was evidence on which to base it, while in fact there was no

evidence of undue influence. Mere abstract proposition should not be given in instructions. *Atkinson* v. *Lester*, 1 Scam. 407; *U. S. Rolling Stock Co.* v. *Wilder*, 116 Ill. 106; *Preisker* v. *People*, 47 id. 382.

The court improperly instructed that if the will was not attested in the "personal and actual presence of Greene," then the jury should find against the will. See *Ambrie* v. *Weishaar*, 74 Ill. 109.

The court instructed the jury that "the true test in every case, therefore, is, did the person whose testamentary capacity is questioned have, at the time of making his will, such mind and memory as enabled him to understand the business in which he was then engaged, and the effect of the disposition made by him of his property?" "If he did, he was possessed of the sound mind and memory required by the statute." *Campbell* v. *Campbell*, 130 Ill. 481.

This test is given by this court in the recent case cited, after an elaborate review of authorities, not only of the decisions of this court, but of the decisions of many other courts. For substantially the same ruling see: *Roe* v. *Taylor*, 45 Ill. 485; *Trish* v. *Newell*, 62 id. 196; *Yoe* v. *McCord*, 74 id. 33; *Carpenter* v. *Calvert*, 83 id. 62; *American Bible Society* v. *Price*, 115 id. 623; *Freeman* v. *Easley*, 117 id. 318.

"If he is capable of buying and selling property, settling accounts, collecting and paying out money, borrowing and loaning money, he must usually be regarded as capable of making a will." *Campbell et al.* v. *Campbell et al.*, *supra; Lilly* v. *Wagoner*, 27 Ill. 395; *Myatt* v. *Walker*, 44 id. 485; *Rutherford* v. *Morris*, 77 id. 39; *Trish* v. *Newell*, *supra; Brown* v. *Riggin*, 94 Ill. 560; *English* v. *Porter*, 109 id. 285; *Bice* v. *Hall*, 120 id. 597; *Schneider* v. *Manning*, 121 id. 376; *Lindsay* v. *Lindsay*, 50 id. 79; *Wiley* v. *Ewalt*, 66 id. 226; *Wilemin* v. *Dunn*, 93 id. 511; *Miller* v. *Craig*, 36 id. 109.

It is manifest, from reading the evidence and the instructions, that much greater mental strength was required in this case, in order to sustain this will, than the law requires, as heretofore laid down by this court. See *Carter* v. *Calvert,* 83 Ill. 62.

We question the correctness of instruction No. 7, also given at the instance of the contestants. It attempts to recite certain supposed facts, which, if found to be facts by the jury, they should find the paper not to be the last will of Mr. Greene. It is, "If they believe," etc., "in the summer and fall of 1886, Stephen Greene had, by reason of extreme old age, or other cause or causes, become so enfeebled in mind as to be incapable of acting rationally in the ordinary affairs of life, and as to be incapable of rationally transacting the ordinary business affairs to which he had been theretofore accustomed," etc. We take it the court will, in passing upon an instruction, give effect to all the language used. It will not assume that the jury treated the language, "and as to be incapable of rationally transacting the ordinary business affairs to which he had been theretofore accustomed," as meaningless, and as adding nothing to the necessary qualification of one, in order that he might execute a valid will. The presumption must be that the jury obeyed the instruction and so considered the whole instruction. But the instruction is faulty in another and dangerous particular. It must have misled the jury. It was, therefore, erroneous. *Appeal of Richmond,* 22 Atlantic Rep. 482.

It gave undue prominence to a part of the case and wholly omitted reference to other parts. It is not proper in the case as made in the record. *Griffen* v. *Evans,* 48 Ill. 52.

It is argumentative, and therefore wrong. It purports to lay down certain propositions, which, if found to be true from the evidence, the jury must find against the validity of the will, and yet omits all reference to the transaction

at the time the paper was executed. *C., B. & Q. R. R. Co.* v. *Griffin,* 68 Ill. 499.

No. 8 is objectionable. It seems to have been drawn with a view of pointing out the way by which the jury might override the positive and uncontradicted testimony of Kirby, Cully, Cassell and Draper, as to the mental condition of Mr. Greene when he executed the paper in question. *Frame* v. *Barger,* 79 Ill. 441.

We admit the rule in this State is, that the verdict of the jury, as in a case at law, is conclusive upon the parties, unless clearly against the weight of the evidence. *Brownfield* v. *Brownfield,* 43 Ill. 147; *Meeker* v. *Meeker,* 75 id. 260; *Calvert* v. *Carpenter,* 83 id. 63; *Long* v. *Long,* 107 id. 210; *American Bible Society* v. *Price,* 115 id. 623.

Mr. WILLIAM BROWN, for the appellees:

No harm has befallen appellants by the giving of instruction No. 4. It was not reversible error. *Preisker* v. *People,* 47 Ill. 382.

Instruction No. 6, given for appellees, is not erroneous. *Keithly* v. *Stafford,* 126 Ill. 507; *Moyer* v. *Swygert,* 125 id. 262.

The rule is, that if one is so far incapacitated mentally as to be incapable of transacting the ordinary affairs of life, he is not of sound mind and memory in the legal sense. *Meeker* v. *Meeker,* 75 Ill. 260; *Campbell* v. *Campbell,* 130 id. 481.

If the testator was capable of buying and selling property, settling accounts, collecting and paying out money, borrowing and loaning money, he must *usually* be regarded as capable of making a will.

These are the ordinary affairs of life. *Meeker* v. *Meeker, supra.*

A verdict will not be disturbed, unless clearly contrary to the preponderance of the evidence. *Moyer* v. *Swygert,* 125 Ill. 262; *Hoobler* v. *Hoobler,* 128 id. 645.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill by appellees, to set aside an instrument purporting to be the last will and testament of Stephen Greene deceased, dated November 24, 1886, and duly admitted to probate, upon the grounds as alleged, that the same was not executed and attested in due form of law; that its execution was procured by undue influence; and that said testator was at the time of its execution of unsound mind and memory. Answers were filed denying the material allegations of the bill, and the issues thus made were submitted to a jury, resulting in a finding, that said instrument was not the last will and testament of the deceased. A motion for a new trial was overruled, and decree entered on the verdict, setting the will aside, and appellants, proponents of the will, prosecute this appeal.

Errors are assigned, questioning the rulings of the trial court in giving instructions, and in the admission of testimony; and also that the verdict is not sustained by evidence.

The controversy here, as well as before the jury, relates to the mental capacity of the testator at the time of the execution of the will; the other grounds alleged, if not practically abandoned, are not sustained by the evidence. To sustain the will, upon that issue, proponents called twenty-odd witnesses, who testified, giving their means of knowledge of the testator's mental capacity at the date of the will, or at times more or less remote therefrom, many of them giving their opinions as to his mental capacity, and others that they saw no evidence of failing intellect. On the other hand contestants produced substantially fifty witnesses, who also gave their means of knowledge touching the decedent's mental condition, many of them testifying to facts and circumstances of more or less pertinency and probative force, and likewise giving their opinion as to his mental capacity. We have carefully considered the evidence, and can not say that the jury were not justified in finding as they have done.

No good purpose will be served by an analysis and comparison of the evidence; it is conflicting, at least in its results, tending to establish directly opposite conclusions, and a determination of the issue, necessarily involved weighing and comparing the opinions of the witnesses as well as the incidents, facts and circumstances testified to by them. If the jury have been fairly and correctly directed in their investigation, their finding of fact, approved by the chancellor, should stand, unless we can say that the verdict is palpably against the preponderance of the evidence. *Moyer* v. *Swygart*, 125 Ill. 262; *Hoobler* v. *Hoobler*, 128 id. 645; *Meeker* v. *Meeker*, 75 id. 260; *Long* v. *Long*, 107 id. 210; *Am. Bible Soc.* v. *Price*, 115 id. 623. There is here no such preponderance.

It is complained, however, that the chancellor misdirected the jury; and, first, that the fourth instruction given for contestants was not based upon any evidence, and was therefore erroneously given. This instruction related to the question of undue influence, and, it is conceded, stated the law accurately. Conceding the position of counsel to be accurate, the question would arise, whether, by the instruction, the jury were misled to the prejudice of proponents. If, upon consideration of the whole case, it is apparent that the instruction could have worked no injury, the giving of it, although erroneous, will constitute no ground for a reversal of the decree. *Preisker* v. *The People*, 47 Ill. 382; *Young* v. *McConnell*, 110 id. 83; *First Nat. Bank* v. *Dunbar*, 118 id. 625.

It is apparent from the record, that the case tried by the jury related to the capacity of the testator to make a valid. will. While the proponents made ample proof of the execution of the will, in conformity with the statute, there was no evidence offered tending to controvert its formal execution. There is, in the record, some evidence tending to show that the relations of the testator with his daughter, Mrs. Cully, and her family, were friendly, and that she

and her husband probably had some influence with him. Sometime prior to the making of the will, the testator left the house of a daughter, where he had heen living, without explanation, and went to Cully's, and remained until his death; and the son-in-law went to town with him, told an attorney Mr. Greene desired to make a will, was present when the memoranda for preparing the will were given, took some part therein, and was also present at the execution of the will. But it can be justly said that evidence of the fact, or any fact tending to prove, that the influence, if any existed, was exerted, or attempted to be exercised, to influence the making of this, or any other will, is wholly wanting, and it is, we think, impossible that the jury could have been misled in finding the will invalid upon that ground.

But if this position is not correct, proponents are in no condition to complain. While the court might, and probably would, if asked, have instructed that there was no evidence to sustain the allegation of undue influence, the chancellor submitted that question to the jury at the instance of both parties, and neither should be heard to complain. The only point made by counsel is, to quote their language, that: "While it contained a correct proposition of law, it was improper, because the jury would naturally conclude from the fact that it was given, that the court considered the evidence as tending to sustain that allegation of the bill." By the second, third, and eleventh instructions given, at the instance of proponents, the question of whether the execution of the will was the result of undue influence, was fully submitted. The third was the antithesis, upon this point, of the instruction complained of, that is, the latter told the jury, if they believed from the evidence that the execution of the will was the result of undue influence, exerted upon the testator by persons named, etc., they should find the instrument not to be his will; while by the third, given for proponents, they were told

that unless they found, from a preponderance of the evidence, that the testator was so under the control, etc., of others, they should find the paper to be his will. By the eleventh, the jury were told, that: "Whether or not Stephen Greene was induced to, and did, execute the paper in question, as and for his last will, by undue influence, is one of the questions to be determined by the jury from the evidence in the case," and the instruction proceeds to inform the jury as to the nature and degree of influence necessary to be exerted to avoid the act of the testator. A party can not complain of error committed at his own instance.

It is also said that the court erred in giving the fifth instruction for contestants, in that it requires that the subscribing witnesses attest the will in the "personal and actual presence" of the testator. The instruction is not subject to the criticism made. The statute requires the attestation to be in the presence of the testator, and it can not be other than in his actual and personal presence. The adjectives used are unnecessary; but, as given, the instruction required no more than the statute required, that is, that the witnesses make attestation in the presence of the testator.

The giving of the sixth of contestants' series is also assigned for error; the portion objected to is as follows:

"If the evidence shows that before the execution of the said paper his mind and memory had, from any cause, become so impaired as that he was, by reason thereof, at the time of executing the will, incapable of rationally transacting the ordinary business affairs of life, with which he had been formerly familiar, then he is said in law to have been of unsound mind and memory."

The converse of this instruction, that is, if the testator had sufficient mental capacity to be capable of transacting ordinary business, he is presumed to be capable of making a valid testamentary disposition of his property, has frequently received the sanction of this court. *Meeker* v.

*Meeker,* 75 Ill. 260; *Brown* v. *Riggin,* 94 id. 560; *Ruther-ford* v. *Morris,* 77 id. 397; *Freeman* v. *Easley,* 117 id. 317; *Campbell* v. *Campbell,* 130 id. 481; *Myatt* v. *Walker,* 44 id. 485; *Trish* v. *Newell,* 62 id. 196; *Schneider* v. *Manning,* 121 id. 376.

It will be observed, that in the instruction in the case at bar the test is made to consist of his capability to transact "the ordinary business affairs of life, with which he had been formerly familiar," so that the jury were confined to a consideration, not only, of his capacity to transact ordinary business, but to ordinary business with which he had been formerly familiar. It is manifest, that this latter clause restricts the field of inquiry instead of broadening it, as is contended by counsel for appellants. If mental incapacity to transact the ordinary business affairs of life is to be adopted as the guide or test in determining the capacity to make a will, it would seem necessary that those transactions with which the party was unfamiliar, and where ignorance of the mode of properly transacting them might be readily confounded with want of capacity to comprehend them, should be excluded from the consideration of the jury. Otherwise the acts and conduct of the testator would form no proper guide to determine his mental capacity. The inquiry always is, in respect of the mental capacity of the testator at the time of making his will, as to whether he had such mind and memory, at that time, as enabled him to understand the business in which he was then engaged, and the disposition made by him of his property. *Campbell* v. *Campbell, supra,* and cases cited; 1 Redf. on Wills, 123–4; Jarman on Wills, p. 28.

As it requires no greater capacity to make a testamentary disposition of property than to transact the ordinary business of life, such as buying and selling property, settling accounts, collecting and paying out money, and the like transactions, it follows logically that if the testator is mentally capable of transacting such business, he is to

be regarded capable of making a valid will. And so it has been generally held. Cases *supra*.

The converse of the rule has not been generally approved. In *Harvey* v. *Sullens*, 46 Mo. 147, the court holds, that an instruction, of like effect with the one under consideration, was erroneous, although, under the particular facts of that case, it was held, as must be done here, that the giving of it was not prejudicial error. The rule seems to be that one may be capable of making a will, and yet be incapable of disposing of his property by contract, or of managing his estate. See Am. Law of Administration (Woerner), 43, and cases cited.

It is stated in Jarman on Wills (5th Am. Ed., 95), that: "The same degree of capacity is not requisite to the making of a valid will that is necessary to the making of a contract, or to manage the ordinary business of life." (See cases in note.) It is well settled that a man may be capable of making a will where his property is small and the distribution of it simple, and at the same time be incapable of making disposition of considerable estate, where the property is involved, and the disposition sought to be made intricate and complicated. *Campbell* v. *Campbell, supra*. That is, one may have the capacity to comprehend a few simple details, and in consequence have testamentary capacity to make valid disposition of his property, while if he had to remember many facts, and comprehend many details, the same degree of mental capacity would be wholly insufficient to an intelligent understanding of the business in which he was engaged. So it may very well be in the disposition of property by sale or deed, or in other ordinary transactions of the business affairs of life. In such transactions a party is not only called upon to comprehend the transaction within itself, but is brought into contact with the intelligence and shrewdness of others, and frequently required to exercise a judgment of men, and of their motives, to shield himself against undue advantage.

.The difficulty of stating standards or tests, by which to determine the degree of mental capacity of a particular person, has been everywhere recognized, and grows out of the inherent impossibility of measuring mental capacity, or its impairment by disease or other causes. Ordinarily, witnesses are required to judge of the mental condition of the person under inquiry, as it is manifested by the observance of, or departure from, conduct of men generally, in the ordinary and common affairs in which men engage. If, therefore, the degree of mentality required in the making of a valid will is no greater than that exhibited in such ordinary affairs, it would, as before said, logically follow, that he who conducted himself according to the standards observed by the mass of the people, in such affairs, would be capable of executing a testamentary disposition of his property. But it does not necessarily follow that the converse of the proposition must also be logical, or true. There are undoubtedly many cases, as in *Harvey* v. *Sullens*, and in this case, where it might be applicable, or at least would do no harm; but we are of opinion, both upon authority and reason, that it can not be laid down as a rule of law applicable to cases of the contest of wills. The late case of *Keithley* v. *Stafford*, 126 Ill. 507, in so far as it is in conflict with this holding, is not to be regarded as authority. We do not, however; deem it important in this case, for the reason that under the facts proved it could not have been prejudicial error. It can not be said, that if regarded by the jury, it could have induced the jury to require a higher degree of capacity than a simple understanding of the details of the business in which the testator was engaged at the time of making his will. A careful study of the evidence fails to disclose any transaction proved which would render the instruction prejudicial.

The seventh instruction is thought to be erroneous, for the reason, as it is said, that it gives undue prominence to certain of the facts. A sufficient answer is, that the instruction recites no facts. It is to the effect, that if the

jury believed from the evidence that during the summer or fall of 1886, the testator had become "so enfeebled in mind as to be incapable of acting rationally in the ordinary affairs of life," and "incapable of rationally transacting ordinary business affairs to which he had theretofore been accustomed," and "to such an extent that he could not remember from day to day, or from hour to hour, what he said or done," or intended to say or do, and "that his mental faculties had become so impaired, that it would be unsafe to entrust him in the discharge of the simple affairs of life," and "that his memory had so far failed that he could not remember his relation to others," and, that such mental condition had continued to the execution of the paper purporting to be his will, then the jury should find that he was not of sound mind and memory. It is to be observed, that all the conditions named are coupled by the conjunction "and," and the jury are not required to find against the proponents, unless all concur. As applicable to the issue of mental capacity, it fairly left it to the jury to say whether, at the time of the making of the will, the testator had sufficient mental capacity to rationally transact the ordinary business affairs of life to which he had been accustomed; but before they could find he had not, they must find that his memory was so impaired that he could not remember his relations to others, or what he intended to do, or had done, from hour to hour, and that his mind was so impaired, that it would be unsafe to trust him to transact the simple business of life. While the attempt to illustrate the extent to which the loss of memory and impairment of the mental faculties must exist to destroy testamentary capacity, may justly subject the instruction to criticism, as rendering it wanting in perspicuity, it stated the law with substantial accuracy when taken as a whole.

The eighth instruction is also objected to. It is justly subject to criticism. It was undoubtedly the duty of the jury to consider all of the evidence, showing the acts and

declarations of the testator, both before and after the "day" of the execution of the will. But it was equally proper, and indeed, perhaps, more highly important, that they should consider the evidence of his condition upon that day. If, however, it be possible, the jury could have understood this instruction as requiring them to consider the evidence of his condition before and after the time of the execution of the will, to the exclusion of what occurred upon that day, it was abundantly cured by numerous other instructions given upon either side. By the fourteenth instruction, given for proponents, and in others given on each side, the true rule is announced, and the jury instructed to consider all the evidence admitted, and therefrom to determine whether the testator was of sound mind and memory at the time of signing and executing the paper purporting to be his will. We think it impossible that the jury could have been misled to the prejudice of appellants.

It is further insisted, that the instructions given for proponents, and those given for contestants are in conflict. A careful study of them will disclose no conflict in any material principle. On the one side the jury were told that if the testator, at the time of the execution of the will, was "able to understand and reasonably transact the ordinary business of life," he must be held capable of making a will; and on the other side they were told, that "if he was incapable of rationally transacting the ordinary business affairs of life, with which he had been formerly familiar," then he was to be deemed incapable of executing his will. There is no other conflict, or claimed conflict, between the instructions, and as before seen, if the instructions on the part of contestants were proper to be given, the limitation, out of which it is claimed the conflict arises, was necessary and proper. Some minor objections are urged, which we have considered, but do not find in them any reason for disturbing the decree. The decree of the Circuit Court will be affirmed.                    *Decree affirmed.*