JOHN T. GREENE, Conservator, Appellee, *vs.* GEORGE C. MAXWELL *et al.* Appellants.

*Opinion filed October 25, 1911.*

1. DEEDS—*higher degree of mental capacity is required to make a deed than a will.* A higher degree of mental capacity is required to make a valid deed than is essential to make a will, and the mere fact that the grantor comprehended that he was making a deed is not sufficient to sustain it.

2. SAME—*grantor must have mental strength to compete with an antagonist.* To sustain a deed the grantor must have sufficient mental capacity to transact ordinary business, and this requires that he have mental ability to cope with an antagonist and to understand and protect his own interests.

3. SAME—*when deed should be set aside at suit of conservator.* A deed should be set aside at the suit of the grantor's conservator where it appears that the grantor, though capable of transacting, alone, such small matters as might be entrusted to a boy, had not the mental strength to protect his own interests, and that he conveyed, for no apparent reason, a remainder worth some $16,000 for a note for $5000, which bore no interest and was not to be paid until the grantor's death.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

JOHN FULLER, for appellants.

V. F. BROWNE, HERRICK & HERRICK, and E. B. MITCH-ELL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellee, John T. Greene, as conservator of Henry Troxel, filed a bill in the circuit court of DeWitt county against the appellants, George C. Maxwell and Bertha A. Maxwell, his wife, for the purpose of setting aside a deed to the appellants executed by Henry Troxel on February 20, 1909. The bill was answered, the court, after a hearing, granted the relief asked, the defendant appealed, and the question presented is whether the evidence sustains the decree.

David Troxel died in 1902, owning about 350 acres of land in DeWitt county, Illinois, and 310 acres in Kansas. His heirs were his two sons, Isaac and Henry, his daughter, Catherine, and the three children of his deceased son, Levi,—Lawrence E. Troxel, Bertie E. Troxel and Elizabeth C. Anger. He left a will giving all his property to his wife during her lifetime and after her death to his three children equally, subject to the payment of $50 to each of the three grandchildren. His widow died about four months after his death. The three surviving children were never married and continued to live upon and farm the land together until Catherine died, in June, 1908, intestate, leaving her brothers and the nephews and niece above named, her heirs. After Catherine's death Isaac and Henry still occupied the land together until Isaac died, in October, 1908, intestate. His heirs were Henry and the above named nephews and niece. Bertie E. Troxel sold his interest in both estates and the whole title became vested in Henry Troxel, Lawrence E. Troxel and Elizabeth C. Anger. They agreed upon a division of the DeWitt county lands, and in November, 1908, exchanged deeds, whereby Henry Troxel became the sole owner of 200 acres, worth $28,000. He was fifty-seven years old, and on February 20, 1909, he

conveyed the whole tract, reserving a life estate to himself, to the appellants for a consideration of $5000, evidenced by the appellants' note, due in three years, without interest, and with the agreement that it should be renewed so as not to be payable until his death. On April 5, 1909, Henry Troxel having been adjudicated of unsound mind, the appellee was appointed his conservator, and thereupon began suit to set aside the deed.

The main question in controversy is the mental capacity of Henry Troxel. Many witnesses were examined and their testimony shows the diversity of opinions customary in such cases. The facts of the life, conduct and business of Henry Troxel were quite fully developed, and our judgment agrees with that of the chancellor who tried the case, that he was not of sufficient mental capacity to execute the deed in controversy. As a boy he attended the district school, where he was slow in his studies, dull and stupid, learning with difficulty and going over the same ground year after year. He played and associated with smaller ' boys much younger than himself and has always associated with boys. He learned little, though he was able to read by spelling out the words and to write with difficulty. As he grew up he continued to work on his father's farm, where he has lived all his life, doing the ordinary work on the farm but always under the direction of some other person. His mind seems not to have developed beyond that of a school boy. He could count money slowly, using his fingers in counting. His father managed the farm and Henry worked under his direction, not acting upon his own responsibility in any particular. After his father's death Isaac took the management of the farm and the business connected with it, and Henry worked under his direction as he had previously under his father's. He was then the owner of an equal interest in the farm and was sometimes formally consulted about what should be done, but the actual charge of affairs was in Isaac's hands. He looked

251 — 22

much older than he was, having the appearance of a man of seventy. He was stoop-shouldered, unsteady in his walk and had an impediment in his speech. He would stand around smiling, laughing and paying no attention while business was being transacted. He went to town, to Clinton, Bloomington and Wapella, by himself, buying his own railroad tickets. He sold butter, eggs, poultry and other produce, and bought groceries, coal oil and similar articles for the house. He could and did make such purchases and sales as might be entrusted to a boy by the direction of an older person, and the evidence shows few transactions of any greater magnitude in which he took an independent part. Matters of business pertaining to the farm, the work on it, the employment of help, the sale of stock, were referred to Isaac. He had a very good memory but his mind appeared to be lacking in the qualities of reason and judgment, and he had not the capacity of comprehension beyond small affairs immediately before him. It is not meant to say that he was wholly lacking in judgment and discretion. He could go about the farm and do ordinary work without an attendant or anyone to watch him. He was not regarded, and was not in the ordinary sense, a lunatic or imbecile. He was simply a feeble-minded man of a low grade of intellectual power, with little capacity for thought or mental resistance, and a ready victim to the persuasive arts of anyone who might think it worth while to attempt to influence him. So long as he lived at home, under the constant supervision of his father and older brother, he needed no guardian, for his position protected him from imposition, but when thrown upon his own resources, left to act upon his own responsibility, he was an easy dupe of the first person who might seek to despoil him.

This account of the man is derived from a consideration of all the evidence in the record. More than a hundred witnesses were examined. We cannot set out all the evidence for the purpose of justifying our conclusion as to

the fact proved. It is not all harmonious and there is evidence tending to support a different conclusion, but we are convinced that the preponderance is in favor of the finding of the trial court. It does not appear that before the making of this deed Henry Troxel, in the fifty-seven years of his life, ever participated in any business transaction of any importance whatever in which he did not have the advice of his near relatives. Before the death of his sister, Catherine, in 1908, the evidence shows that he practically never did any business. When a division of her estate, and later a division of Isaac's estate, became desirable, it was necessary for him to join in such division. He then entered into contracts for the division of the land in Illinois and executed deeds in compliance with those contracts and signed notes involved in carrying them into effect. These transactions were all with the members of his family jointly interested with him and were all apparently for his benefit. At any rate, no claim has been made that they were not perfectly fair. When the contract for the sale of a part of the Kansas land was made, his nephew and his niece's husband were with him. When he bought the monuments for the cemetery, his nephew, Lawrence, was with him and approved the contract. When he acted as executor of his father's will it was jointly with his brother, Isaac.

There was no reason for Henry's making the deed to the appellants. The appellant George C. Maxwell was his cousin and lived near him and they appear to have been friendly, but the evidence does not show any special intimacy between them. Henry received nothing for the deed. He conveyed to the appellants the remainder in $28,000 worth of land, for which they were to pay $5000 after they got the land. Regarded as a contract of sale, it was of such a character as no rational man comprehending the nature of the transaction would enter into. Regarded as a gift, it was of such a character as, considering the relation and character of the parties, no rational man would have

made and no fair man would have accepted. The value of the life estate reserved, according to the Northampton mortality tables, was $11,680. The value of the remainder was therefore $16,320, for which the appellants were to pay $5000 after they had received the property.

It is not enough to sustain this conveyance that the grantor comprehended that he was making a deed of the property. The mental capacity required to sustain the validity of a deed is of a higher degree than that required to enable a testator to make a will. For the latter purpose it is sufficient for the testator to understand the business in which he is engaged, his property, the natural objects of his bounty and the distribution he desires to make of his property. To sustain a deed, however, he must have the ability to transact ordinary business. The testator has no antagonist to meet, but in ordinary business transactions are involved a contest of judgment, reason and experience and the exercise of mental powers not necessary in the testamentary disposition of property. Mental strength to compete with an antagonist and understanding to protect his own interest are essential in the transaction of ordinary business. (*Ring* v. *Lawless,* 190 Ill. 520.) One may be capable of making a will yet incapable of disposing of his property by contract or of managing his estate. (*Greene* v. *Greene,* 145 Ill. 264.) Henry Troxel had not the mental strength to resist the demands of his cousin or to protect his own interest in dealing with him. He had not the capacity to comprehend the value of what he was conveying or whether he would be benefited or injured by the conveyance.

In arriving at our conclusion we have not taken into consideration the testimony of Henry Troxel or that of Lawrence E. Troxel as to any conversation with the appellant George C. Maxwell. Nor have we given any weight to the argument of counsel for the appellants that the proceeding in the county court of DeWitt county was a farce,

or to the agreement between Lawrence E. Troxel, Bertie E. Troxel, Elizabeth C. Anger and the counsel for the appellee as to attorneys' fees.

The decree of the circuit court was right, and it is affirmed.

*Decree affirmed.*