GEORGE W. NOBLE *et al.* Appellees, *vs.* ALICE NOBLE *et al.* Appellants.

*Opinion filed October 26, 1912.*

1. DEEDS—*mere fact that grantor comprehends that he is making a deed is not sufficient.* The mental strength necessary to sustain a deed must be such as to enable the grantor, in dealing with his property, to understand and protect his own interests, and it is not sufficient that he merely comprehends that he is making a deed.

2. TRUSTS—*when equity will raise a trust by construction.* Where one obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, in equity and good conscience, to be permitted to retain it, a court of equity will raise a trust by construction, and will require the execution of the trust in such a manner as to protect the rights of the real parties in interest.

3. SAME—*the term "fiduciary or confidential relation" is a comprehensive one.* The term "fiduciary or confidential relation" is a comprehensive one, and such relation exists whenever influence is acquired and abused or confidence is reposed and betrayed.

APPEAL from the Circuit Court of Henderson county; the Hon. ROBERT J. GRIER, Judge, presiding.

A. E. CRANE, SAFFORD & GRAHAM, and E. L. MOFFET, for appellants.

GEORGE W. WERTS, JR., EVERETT L. WERTS, and JAS. W. GORDON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was an action brought by appellees, George W. Noble and James F. Noble, against appellants, for the partition of the north-east quarter of the south-east quarter of section 14, town 12, north, range 4, west of the third principal meridian, in Henderson county, Illinois.

The bill alleged that Clarinda Alice Noble died in March, 1906, leaving no child or children or descendants of a child or children and no parents or husband, but leaving her surviving Cyrus W. Noble and the appellees, James F. and George W. Noble, her brothers, as her only heirs-at-law. The bill alleged that Clarinda was at the time of her death about forty years of age, and that from the time she was a child to the time of her death she was *non compos mentis* and entirely incapable of transacting the ordinary business affairs of life; that on the 11th day of September, 1899, she was the owner of said tract of land, and on that date made a quit-claim deed conveying said land to Cyrus W. Noble, reserving to herself a life estate; that she received no consideration for said deed of conveyance; that said Cyrus W. Noble procured the deed from her for the purpose of protecting her interest and the interest of her heirs in said premises, and that the land was held by him in trust for her and since her death in trust for her heirs; that said deed was not made with the intent to convey absolute title to said Cyrus W. Noble, but only in trust. The bill alleged that since the making of the deed the rents were received by said Clarinda during her lifetime and since her death they have been divided equally among her three brothers; that Cyrus W. Noble died in November, 1910, leaving the appellants, his widow and children, as his only heirs-at-law. The bill sets out the interests of the parties, and prays that the deed from Clarinda to Cyrus W. Noble be declared null and void and be set aside and that partition be decreed.

Appellants, the widow and children of Cyrus W. Noble, deceased, answered the bill. The answer denies that Clarinda Alice Noble was *non compos mentis* at any time during her life and avers that she was entirely capable of understanding and transacting the ordinary business affairs of life, and that at the time the deed was made she was in full possession of her ordinary faculties of mind, and before that time, and afterward, could, and did, transact her ordinary business affairs. The answer denies the deed was procured for the sole purpose of protecting the interest of said Clarinda and that the land was held in trust for her and her heirs; denies that the deed was not made with the intent to convey the absolute title therein to the said Cyrus W. Noble; denies that the deed was made without consideration, but avers that Cyrus W. Noble had from time to time advanced money to his sister out of his own funds to provide for her comfort, had made frequent trips from his home in Kansas to her home in Henderson county, Illinois, to visit her and give her counsel, and had otherwise provided for her; that he was her favorite brother, and that the deed was made in consideration of such services and to carry out a long-cherished and often-expressed intention to leave her property to said Cyrus W. Noble and his children. The answer admits that complainant James F. Noble has had control of the lands and has attended to the renting of the same, but always under the supervision of Cyrus W. Noble and by his permission and authority, and avers that the division of the rents among the three brothers after the death of Clarinda was in pursuance of an agreement among the three brothers, which was to continue only during the lifetime of Cyrus W. Noble.

After replication filed, the cause was referred to the master to take the testimony and report his conclusions. The master reported, recommending a decree granting the relief prayed, and a decree was entered in accordance with the recommendations of the master. The chancellor found

from the evidence and recited in the decree that the deed from Clarinda to Cyrus W. Noble was prepared by him and executed at his solicitation; that no consideration was paid Clarinda and she received nothing from any source for making said conveyance; that Clarinda was a person of weak and impaired intellect, of little business ability or experience and unacquainted with important business transactions; that the property described in the deed was substantially all she owned; that her brother Cyrus was a lawyer, in whom she had confidence; that he lived in the State of Kansas and from time to time visited Clarinda and looked after business matters for her, as did also her brother the appellee James F. Noble; that both the said brothers recognized her impaired mentality and for her protection devised the plan of procuring her to make a deed to Cyrus; that the deed was made for the purpose of protecting Clarinda and preventing others from getting the land away from her, and that it was not made as a gift to Cyrus. The decree finds that the circumstances surrounding the making of the deed and the relationship existing between the parties to it raised a trust, and charged Cyrus Noble, and his widow and heirs since his death, as trustees of said real estate for the use and benefit of the heirs-at-law of Clarinda. From that decree an appeal has been prosecuted to this court.

The principal grounds relied upon by appellants for the reversal of the decree may be embraced under four propositions, as follows: (1) The bill does not allege nor the proof show an express trust; (2) the bill does not sufficiently allege facts out of which the law would raise a resulting or constructive trust nor does the evidence prove facts out of which such a trust would arise; (3) no fiduciary relation is shown by the evidence and the relief granted was not warranted by the prayer of the bill; (4) Clarinda Alice Noble had sufficient mental capacity to transact ordinary business, and conveyed the land to Cyrus W.

Noble as a gift, pursuant to an intention on her part that the land should go to him and his children.

It is conceded by appellees that neither the bill nor the proof made a case of an express trust, but they contend both bill and proofs are sufficient to sustain the decree on the ground that the facts alleged and proved established a resulting trust.

Clarinda Alice Noble was forty years old at the time of her death. Her father, from whom she derived title to the land, died in 1897. Her mother died in 1902 or 1903. Clarinda was never married. The testimony shows that from childhood to her death she was mentally weak and defective. She attended public school until eighteen or twenty years old but was unable to learn much. She appears to have learned to read a little but was unable to write. She made her mark to the deed executed to her brother. There was no conflict in the proof as to her being weak-minded, but there was some conflict as to whether she had sufficient mental capacity to know and understand the nature and effect of her act when she made the deed to her brother. Appellees' witnesses, some of whom had known her from her childhood, testified she had not such mental capacity. Some of appellants' witnesses testified they thought her capable of understanding the nature and effect of the deed if explained to her at the time. During her lifetime she received the rents from the land and made purchases of household articles for herself at the stores and also of clothing for herself, and from these acts appellants contend that she was shown to be capable of transacting the ordinary affairs and business of life and of making a conveyance of her land. The business she is shown by proof to have transacted was of a very simple nature, and the weight of the proof, in our judgment, sustained the finding of the decree that she was mentally incapable of executing the deed. The mere fact that a grantor comprehends he is making a deed is not sufficient. The men-

tal strength necessary to sustain a deed must be such as to enable the grantor, in dealing with his property, to understand and protect his own interest. *Greene* v. *Maxwell,* 251 Ill. 335.

Cyrus W. Noble was a lawyer, residing in Kansas. The answer alleges he was the favorite and best beloved brother of Clarinda Alice Noble, to whom she looked for counsel and direction in her graver business affairs. He visited his sister about once a year and represented her and her mother in their business matters, together with his brother the appellee James F. Noble. The proof also shows that Cyrus W. Noble stated he desired to procure a conveyance from his sister for the purpose of protecting her in the use and benefit of her land during her lifetime, and at her death it would be divided between him and his brothers. Appellee James F. Noble testified that Cyrus sent him a deed to be executed by their sister, but she refused, at his request, to sign it and he returned it to Cyrus. Afterwards Cyrus visited his sister and she executed the deed. It was testified that Cyrus, in speaking of his sister, said she was incapable, mentally, of protecting herself and her business interests; and Jonathan I. Moorehead testified to a conversation between Cyrus and his brother James F. Noble, after the deed was made, in which Cyrus said they would buy out the interest of their other brother, who resided in Oregon, and he and his brother James would divide the land between them. James F. Noble testified to the same conversation.

It was admitted by appellants in their answer to the bill that after the death of Clarinda Alice Noble, and before the death of Cyrus, the rent from the land was equally divided among the three brothers, but it was alleged this was in pursuance of an agreement among the three brothers, which was to continue only during the lifetime of Cyrus. No proof was made of any such agreement, nor was it explained why, if Cyrus was a *bona fide* owner of the land,

he divided the rents with his brothers until his death, which was four years after the death of Clarinda. The proof abundantly warranted the conclusion that a confidential or fiduciary relation existed between Cyrus W. Noble and his sister. The conveyance was without any consideration and under circumstances that the law would imply a trust. Where one obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not in equity and good conscience be permitted to hold it, a court of equity will raise a trust by construction, convert him into a trustee, and require the execution of the trust in such manner as to protect the rights of the real parties in interest. (*Allen* v. *Jackson*, 122 Ill. 567; *Stewart* v. *Duffy*, 116 id. 47.) The term "fiduciary or confidential relation" is a comprehensive one, and exists whenever influence has been acquired and abused or confidence has been reposed and betrayed. *Stahl* v. *Stahl*, 214 Ill. 131.

It may be conceded the bill is not skillfully drawn, but it is sufficient to authorize a decree declaring a resulting trust in Cyrus W. Noble. In addition to the specific relief prayed for, the bill prayed for such other and further relief, general and special, as to equity might appertain. Under the allegations and prayer of the bill and the proofs offered, we think it clear the decree entered was warranted, and it is affirmed.              *Decree affirmed.*