BARKLEY et al., Appellants, v. BARKLEY CEMETERY ASSOCIATION et al.

### Division Two, December 23, 1899.

1. **Will: MOTION TO STRIKE OUT: WAIVER.** Plaintiffs brought suit to set aside a will, and defendant answered that all the legatees accepted their bequests under the terms of the will and hence that they should be estopped from denying its validity, and plaintiffs moved to strike out this part of the answer, which being overruled, they pleaded over, and admitted that the legatees took under the will but denied that by so doing they acquiesced in its terms, or admitted it to be the last will of the testator.   *Held,* that, by pleading over, the plaintiffs waived their right to have the action of the court in overruling their motion to strike out reviewed.   *Held,* also, that as the question of estoppel was not submitted to the jury, the plaintiffs could not have been prejudiced by the admission of evidence tending to show that the legatees had accepted of the provisions of the will.

2. ——: **UNDUE INFLUENCE: CONFIDENTIAL RELATION.** The rule that indulges a presumption of undue influence in the making of a will where confidential or fiduciary relations exist, is based on some pecuniary benefit to be derived directly or indirectly under the will by the person, or by a church or charity represented by the person, who sustains the confidential relation to the testator.

3. ———: ———: ———: LAWYER. The testator believed the attorney who drew his will to be an honest man and a good lawyer, and had a great admiration for him as a public man, and predicted a bright future for him. The lawyer did no other legal business for him except to write two wills within a year. The testator organized a cemetery association, retained all the stock except four shares, made the lawyer a nominal stockholder and director, and advised with him concerning its management, sent him to St. Louis to employ a designer, and otherwise made him an active officer in the management of the cemetery, and on his death left nearly half of his property (about $20,000) as an endowment of the association. *Held*, that these facts raise no presumption of undue influence which it devolved on defendants to explain, nor did they require them to show the bequest to the cemetery association to be the deliberate offspring of the testator's unbiased mind.

4. ———: ERRONEOUS INSTRUCTION: RIGHT VERDICT. An instruction outside of any issue presented by the pleadings should not be given. But in spite of the presumption that the giving of an erroneous instruction is presumed to be prejudicial, if it is clear that the verdict is for the right party, and that no other verdict could have been reached without injustice, the giving of such instruction will not justify a reversal or new trial.

Appeal from Ralls Circuit Court.—*Hon. W. W. Fry,*
Special Judge.

AFFIRMED.

*Elijah Robinson, J. W. Hays* and *Tapley & Fitzgerrell*
for appellants.

(1) The trial court committed error in overruling plaintiff's motion to strike out those parts of defendants' answer which alleged that certain of the plaintiffs had petitioned the court for the appointment of trustees to hold certain funds mentioned in the paper in controversy, and had accepted the benefit of certain provisions in said paper; and also committed error in admitting, against the objections of the plaintiffs, evidence offered by defendants tending to prove those allegations of said answer. The only issue which

could be tried was "whether the writing produced, be the will of the testator or not." This is made so by the positive and unequivocal provisions of the statute. R. S. 1889, sec. 8888. (a) If the testator had not sufficient mental capacity to make a will, or if the execution of the paper in controversy was induced by undue influence, then said paper was not the testator's will, and no act of any of the plaintiffs, occurring subsequent to the time of his death, could make it his will. (b) The statutory proceeding to contest a will is an action at law, and the court could not, in that proceeding, undertake to adjust the equitable rights of the parties. Lyne v. Marcus, 1 Mo. 410; Young v. Ridenbaugh, 67 Mo. 574; Garland v. Smith, 127 Mo. 583; Harris v. Hayes, 53 Mo. 90; McMahon v. McMahon, 100 Mo. 97; Owen v. Sinkler, 110 Mo. 54. (2) The will in question was drawn by Perry Wood, who was and had been for several years, the confidential friend and legal adviser of the testator. The undisputed testimony shows conclusively that testator not only looked to him for legal advice, but also sought, and followed implicitly, his advice in other matters. Perry Wood was also the principal promoter of the cemetery scheme, as well as a stockholder and director of the association, and its legal adviser and most active manager. These facts raise a presumption of undue influence, which defendants are called upon to rebut, by showing that the bequest to the cemetery association was the deliberate offspring of the testator's own unbiased mind, and not the result of that influence which is presumed to result from the relation of attorney and client. Garvin v. Williams, 44 Mo. 465; Harvey v. Sullens, 46 Mo. 147; Cadwallader v. West, 48 Mo. 502; Garvin v. Williams, 50 Mo. 206; Street v. Goss, 62 Mo. 226; Bradshaw v. Yates, 67 Mo. 228; Bridwell v. Swank, 84 Mo. 455; Gay v. Gillilan, 92 Mo. 250; Maddox v. Maddox, 114 Mo. 35; Carl v. Gabel, 120 Mo. 283. The fact that the bequest was not made to Mr. Wood personally, does not change the rule. Yosti v.

Laughran, 49 Mo. 599; Rankin v. Patton, 65 Mo. 387; Ford v. Hennesy, 70 Mo. 580; Caspari v. First German Church, 12 Mo. App. 293; Bridwell v. Swank, 84 Mo. 455. (3) The court committed error in giving defendants' instruction numbered 4. If the question as to whether the testator knew the contents of the paper in controversy, was an issue in the case, it was a matter for proof, about which there were no legal presumptions; and said instruction was therefore calculated to mislead the jury, to the prejudice of plaintiffs. Morton v. Heidorn, 135 Mo. 608.

*Geo. A. Mahan, Roy & Hays* and *J. O. Allison* for respondents.

(1) Plaintiffs by replying to those matters in defendants' answer which they had moved to strike out, waived all rights raised by the motion. Williams v. Railroad, 112 Mo. 486; Eley v. Porter, 58 Mo. 158; Gale v. Foss, 47 Mo. 276; Pickering v. Telegraph Co., 47 Mo. 460; Scovill v. Glassner, 79 Mo. 454; Coffman v. Walton, 50 Mo. App. 404. The answer alleges that all of the plaintiffs received and accepted bequests under the terms of the will in controversy. Plaintiffs by their reply admit this to be true. This constitutes an estoppel and is properly raised under the issue, "will or no will," which was the only issue submitted to the jury by the court. Lilly v. Townsend, 68 N. W. Rep. 136; White v. Mayhall, 25 S. W. Rep. 881; Kats v. Schnaider, 34 N. Y. Sup. 315; Block v. Harrig, 79 Md. 146; Gorham v. Dodge, 14 N. E. Rep. 44; Wilbanks v. Wilbanks, 18 Ill. 17; Thellusson v. Woodford, 13 Ves. 210; 2 Williams Ex'rs, 1441; Hyde v. Baldwin, 17 Pick. 303; 2 Worner on Law of Adm'r, 1015; Wifram on Wills, p. 249. (2) The association did not have a legal adviser. Mr. Wood was neither its active manager nor its legal adviser. It was managed by a board of directors, of which testator Barkley was the moving, lead-

ing, controlling power. The directors did not receive compensation. The facts in the case do not raise the presumption of undue influence. The relation of attorney and client did not exist. Neither did any confidential relations exist. Mr. Wood did not derive any benefit from the will, either directly or indirectly. Hamilton v. Armstrong, 120 Mo. 597; Hegney v. Head, 126 Mo. 628; Gay v. Gilliland, 92 Mo. 263; Bidwell v. Swank, 84 Mo. 467; Hatcher v. Hatcher, 139 Mo. 624; Towson v. Moore, 11 App. D. C. 377. A presumption of undue influence will not arise from the drawing of the wills by Mr. Wood. Hamilton v. Armstrong, 120 Mo. 619; Samson v Samson, 25 N. W. Rep. 233; Hunter v. Atkins, 3 Mylne & Keen, 113. (3) All through the record it stands boldly out that the testator knew exactly what he was doing. There was no evidence of unsoundness of mind, and no evidence of undue influence or to raise the presumption of undue influence. Aylward v. Briggs, 145 Mo. 612; Maddox v. Maddox, 114 Mo. 35; McFadin v. Catron, 138 Mo. 197. (4) When defendants' instructions are read together they are plain, fair and properly placed the case before the jury; but even if they did not, the verdict was for the right party and it is immaterial if error did occur. Von De Veld v. Judy, 143 Mo. 367; Vogg v. Railroad, 138 Mo. 172; Fox v. Windes, 127 Mo. 513; Osborne v. Morgan, 13 Mass. 1; Brobst v. Brock, 10 Wall. 519. A *prima facie* case for the probate of the will having been made by the testimony of the subscribing witnesses, and there being no evidence tending to show unsoundness of mind or undue influence, and there being no such relation between the testator and James P. Wood as would raise a presumption of undue influence, the judgment of the trial court should be affirmed regardless of any alleged error in the trial. Cash v. Lust, 142 Mo. 630; McFadin v. Catron, 138 Mo. 197; Maddox v. Maddox, 114 Mo. 35.

BURGESS, J.—This action is a statutory contest of the validity of the will of Matthew T. Barkley who died in Ralls county, in March, 1892, to which Barkley Cemetery Association, his executors and others are made defendants. The will bears date August 16, 1890, at which time the testator was about sixty-nine years of age.

The petition alleges mental incapacity to make a will, and that undue influence was exercised over him by "some of the defendants, together with other persons acting in concert with them."

The answer is a general denial, and further alleges that all of the legatees accepted their bequests under the terms of the will and hence they should be estopped from saying that it is not the will of M. T. Barkley.

Plaintiffs moved to strike out all of that part of defendants' answer in which it is alleged that all of the legatees accepted the provisions of the will, and should therefore be estopped from denying its validity. The motion was overruled.

Plaintiffs then replied to the answer, admitting that the legatees took under the will, but denied that by so doing they acquiesced in its terms or admitted it to be the will of M. T. Barkley.

The testator was a bachelor, and lived upon a large farm which he owned, and was also for many years and at the time of his death a stockholder and director in the Ralls County Bank. He had always been regarded as a shrewd business man, and was in the habit of loaning money upon real estate security. Was worth at the time of his death about $45,000. He had two sisters and one brother who died before he did, all of whom were buried in a graveyard near New London in Ralls county, the fence around which had been suffered to decay, and the yard to become a common, and the tombs which at one time marked the resting places of the dead broken

and disfigured.    Some time during the sixties he made a will by which he gave his property to his three sisters and two brothers who were then living, equally.

Some time prior to August, 1889, he conceived the idea of making a charitable bequest, endowing a cemetery wherein the graves of the dead could be better cared for, and began to arrange for a new cemetery.    With this object in view, on August 6, 1889, he bought a tract of land near New London, and on the 26th day of August, 1889, he filed his petition and articles of association in the circuit court of Ralls county, asking for the incorporation of Barkley Cemetery Association, in which he was named as president, James P. Wood secretary, and James R. S. McCune treasurer.    Upon this petition, a *pro forma* decree was rendered incorporating the cemetery as prayed for.    In the 7th article of association, provision is made for receiving property "by gift, devise or otherwise," and that the same shall be "applied exclusively to the acquisition, improvement or ornamentation, care, custody and management of the cemetery."    The directors were M. T. Barkley, James P. Wood, Alex. C. James, James R. S. McCune and Reuben F. Roy.    Shares $10 each, of which M. T. Barkley owned 146 shares and the other four directors one each.

On September 21, 1889, he made a will giving something more than half of his property to his relatives and endowing Barkley Cemetery Association with the balance.

In item 17th of this will, he said:    "In order to provide for the permanent endowment of Barkley Cemetery Association, a corporation duly organized under the laws of the State of Missouri, and in which I own all the shares except four, and which said association was originated by me with a view to endow it as a work of charity and benevolence, as well as affording a resting place for the dead, I do hereby give and bequeath to James R. S. McCune and to his successor or successors, as trustees," etc., and then made provision for the endowment of the cemetery.

On the 30th day of November, 1889, he deeded a portion of a tract of land which he had bought from Mr. Wellman to Barkley Cemetery Association, being about 16 acres.

The board of directors of Barkley Cemetery Association had many meetings at which beautifying and laying off the ground into lots was discussed, and a landscape designer of St. Louis was consulted, who made a plat of the same, and after consultation with Mr. Barkley a lot near the entrance and in a prominent part of the cemetery was marked Barkley Block.

On the 16th day of August, 1890, he made another will, going on the streets of New London and himself asking the witnesses to meet him in Mr. Wood's office. It was substantially the same as the one made September 21st, 1889. In it Mr. Barkley made provision that he should be buried in Barkley Block in Barkley Cemetery, and a $1,000 monument should be erected at his grave. This will he took to his banker, sealed up, and left it with him. And after Mr. Barkley's death it was handed to the probate judge and duly probated. By this will he provides liberally for his then surviving relatives and his servants, giving them about half his estate, and endowed Barkley Cemetery Association with the residue. In item 17 of this will he refers to Barkley Cemetery Association as "a charitable and benevolent association, founded principally by me."

At the time of his death, only one brother and a sister were living, both very old. The brother knew of the gift of the land to the cemetery. The sister died shortly after the testator. At the time he made this will he was engaged in transacting his own business in a more than ordinarily intelligent manner. He directed the management of his farm and business while on his deathbed.

James W. Lear, for many years clerk of the circuit court, wrote most of his deeds, which was his principal legal business. George E. Mayhall, a lawyer of New London, was

sometimes employed.   Hon. James Perry Wood, now dead, wrote his last will, as well as that of September 21, 1889. He believed Mr. Wood to be an honest man and a good lawyer.   Seemed to have a great admiration for him as a public man, and predicted a bright future for him.   Besides writing the wills he never did any law business for him.   Mr. Barkley made Wood one of the directors in the cemetery association, and the board sent him to St. Louis to see the landscape designer, Joyce.   He, together with the other directors, was active under the direction and management of Barkley, who was the promoter of the Barkley Cemetery Association.

While J. P. Wood was one of the promoters and directors of the cemetery association he owned but one share of stock of a par value of $10.   There were 150 shares of stock in the association of which the testator owned one hundred and forty-six and Messrs. Wood, McCune and James and Judge Roy one share each.

The legatees named in the will received from the executors of the will the money bequeathed to them.

Plaintiffs requested the court to instruct the jury as follows:

"1st.   The court instructs the jury that if they believe from the evidence in the case that at the time of the signing of the paper in question James P. Wood was the owner of stock in the Barkley Cemetery Association and an officer and legal adviser of said corporation or one of its legal advisers; and if the jury further believe from the evidence in the case that at said time and for some time prior thereto said Wood was the confidential friend, attorney and legal adviser of said M. T. Barkley, then the law presumes that said Wood exerted an undue influence over said Barkley and that the signing of said will by said Barkley was the result of such influence, and the jury will find the issues for the plaintiffs, and that said paper is not the will of said M. T. Barkley, unless such presumption has been overcome by the evidence in the

case and it has been shown by the evidence to the reasonable satisfaction of the jury that said paper was executed by said Barkley of his own free will, and not as the result of influence exercised over him by said Wood.

"2d. The court instructs the jury that if they believe from the evidence in the case that the will in question was prepared by James P. Wood, and if they believe from the evidence that said James P. Wood was at the time said will was signed by said Barkley, and for some time prior thereto, the confidential friend, attorney and legal adviser of said Barkley, and if they further believe that all that time said Wood was a stockholder in and an officer of said Barkley Cemetery Association and the principal and most active promoter thereof, then from these facts the jury may find that said Wood exerted an undue influence over said Barkley and thereby induced him to sign and make the bequest to said cemetery association therein mentioned, unless the signing of said will and making of said bequest is otherwise satisfactorily explained and accounted for by the evidence in the case.

"3d. The court instructs the jury that the plaintiffs allege that the paper read in evidence, dated August 16, 1890, and purporting to be the last will and testament of M. T. Barkley, deceased, is not his will, and the defendants deny this allegation and say said paper is his will, and the issue for the jury to determine in this case is whether said paper is in reality the will of said deceased M. T. Barkley; and upon this issue the court instructs the jury that to entitle a man to make a testamentary disposition of his property he must possess a sound mind and disposing memory; and by this is meant such mind and memory as would enable him to comprehend and understand the nature of the transaction in which he was about to engage, that is, the nature and effect of the will he was undertaking to make; to recollect the amount and charac-

ter of his property which he meant to dispose of, and to call to mind and appreciate the relation existing between himself and those persons who were related to him by the ties of blood and affection, as well as those who were to be named in his will as the objects of his bounty; and if the jury believe from the evidence in the case that the said M. T. Barkley was, at the time of signing and attestation of said paper in question, possessed of a sound mind and disposing memory, as above defined, and that he signed said paper, as and for his last will, then you will find that said paper is his will, unless you believe from the evidence in the case that an undue influence was exerted by James P. Wood to induce said Barkley to make the will as it was written. By the term "undue influence," as used in these instructions, is meant the exercise of such power and influence by one person over the mind of another as would result in the subjugation of the mind of the one to that of the other, and complete substitution of the will of the one for the will of the other in the matter in which they were engaged; and if the jury believe from the evidence in the case that by reason of old age and physical ailments, or by reason of his friendship for, and confidence in James P. Wood, said Wood was enabled to, and did exert such an influence over the mind of said Barkley as to substitute his will and wishes for that of said Barkley in the disposition of his property by will, and if the signing of said paper by said Barkley was induced and brought about by the exercise of that influence, then the jury will find that said paper is not the will of said deceased M. T. Barkley, notwithstanding they may further believe from the evidence in the case that said Barkley was, at the time said paper was signed and attested, of sound mind and disposing memory, as this term has been defined in these instructions.

"4th. To establish undue influence on the part of James P. Wood over the mind of said Barkley, and that the signing of the paper in controversy was induced and brought about by such influence, it is not necessary that it should be shown that

the said Wood purposely practiced a fraud on said Barkley, or purposely and intentionally sought to acquire and exert an undue or improper influence over the mind of said Barkley; but if the jury believe from the evidence in the case that an undue influence (as the same is defined in these instructions) on the part of said Wood over the mind of said Barkley did exist, and that the signing of the paper in controversy by M. T. Barkley, was induced and brought about by the exercise of such undue influence, then the jury must find a verdict in favor of the plaintiffs, and against the validity of said will, regardless of how such influence was acquired, or the manner in which it was exercised.

"5th.    The court instructs the jury that it is not necessary that undue influence should be proven by direct and positive testimony, but the same may be proven by facts and circumstances; and in passing on the question as to whether the signing of the paper in question by M. T. Barkley was induced by undue influence on the part of James P. Wood, it is proper for the jury to take into consideration the terms of the will itself; the relations of said Barkley to plaintiffs, as shown by the evidence, his relations to and connection with the Barkley Cemetery Association, as shown by the evidence, his age and mental and physical condition as shown by the evidence, his relations with and feelings towards said James P. Wood, as shown by the evidence, his sentiments towards and opinions of J. R. S. McCune, as shown by the evidence, the relations to and connection of said James P. Wood with said Cemetery Association, and the preparation of said will, as shown by the evidence, as well as all other facts and circumstances disclosed by the evidence in the case; and if from all such facts and circumstances, the jury believe that the signing of the paper in controversy by said Barkley was induced and brought about by an undue influence on the part of said James P. Wood, as undue influence has been defined in these

instructions, then it is the duty of the jury to find that the said paper is not the will of said M. T. Barkley."

The court refused the first and second instructions and gave the others. To which refusal to give said two instructions as prayed the plaintiffs at the time excepted and saved their exceptions.

The court at the request of the defendants instructed the jury as follows:

"1st. If the jury find from the evidence in the cause that the said M. T. Barkley signed his name to the instrument of writing alleged to be his last will and testament, dated August 16, 1890, and that he declared to the witnesses Downing and Hendrix that it was his last will and testament, and that at the time he so declared he requested said Downing and Hendrix to sign the same as witnesses thereto, and that said Downing and Hendrix signed said will in the presence of said Barkley as witnesses thereto at such request, and that said M. T. Barkley was at the time of the execution of said will as aforesaid of sound mind, then the jury should find that said instrument is the last will of said Barkley, unless the jury should find that said will was the result of undue influence as explained in other instructions herein.

"2d. The court instructs the jury that it was not necessary that said instrument should have been read to said subscribing witnesses, or that they should know what was in said instrument, at the time they signed said will as witnesses.

"3d. The court instructs the jury that, in the attestation of the instrument in controversy, it was not necessary for the witnesses W. G. Hendrix and T. J. Downing to sign it as witnesses in the presence of each other, but it was only necessary that they should sign it in the presence of the deceased, and at the request of the deceased. Nor was it necessary that the deceased, M. T. Barkley, should have in fact signed his name to said instrument in the actual presence of either of the witnesses, provided the jury find from the evidence that, at the

time of the witnesses Downing and Hendrix so signing and attesting said instrument, it had been signed at any time prior thereto by said Barkley and the deceased acknowledged or made known to them at the time or just before they signed as witnesses, if they did so, by word, act or sign that he had signed or executed the same as his last will and testament.

"4th. The jury are instructed that the law presumes that said Barkley knew what was in said instrument at the time he signed it, if he did sign it, unless the jury find from all the evidence in the cause that said Barkley did not know what was in said will, and the burden of proving by the greater weight of the evidence that said Barkley did not know what was in said will, rests upon plaintiffs.

"5th. The court instructs the jury that to constitute a sound and disposing mind it is sufficient that Matthew T. Barkley at the time of making his will had sufficient understanding and intelligence to transact his ordinary business and understood what disposition he was making of his property, what property he owned and to whom he was giving it.

"6th. The jury are instructed that 'undue influence' used in these instructions means that such influence as amounts to over-persuasion, coercion or force, overpowering and destroying the free agency and will power of the persons upon whom it is used, and no amount of influence or advice or persuasion which comes short of such effect will amount to undue influence, and the burden of proving, by the greater weight of the evidence in the cause, that such undue influence was exerted and exercised rests upon the plaintiffs.

"7th. The court instructs the jury that a man has the right to dispose of his property by will as he may choose, even to the entire exclusion of those who but for the will would be the heirs of his estate; and the jury are not to consider whether or not the disposition made by the testator is appropriate or in the opinion of the jury just; but simply

whether the paper propounded as his will be or be not his last will and testament."

To the giving of said instructions and each of them by the court the plaintiffs at the time excepted and saved their exceptions.

The jury found for defendants, and after unsuccessful motion to set the verdict aside and for a new trial, plaintiffs bring the case to this court by appeal.

Plaintiffs claim that error was committed by the court below in overruling their motion to strike out parts of defendants' answer which alleged that plaintiffs had accepted the provisions of the will, and should by reason thereof be estopped from asserting its invalidity.    But the record discloses that after the motion was overruled, plaintiffs pleaded over, and admitted that the legatees took under the will, but denied that by so doing they acquiesced in its terms, or admitted it to be the last will of the testator.

Under our system of practice, when a party moves to strike out all or any part of an adverse petition or answer, and the motion is overruled, and he thereafter pleads over to the same matter, he thereby waives his right to have the action of the court overruling the motion reviewed.    [Walser v. Wear, 141 Mo. 443; Williams v. Railroad, 112 Mo. 463; Ely v. Porter, 58 Mo. 158; Gale v. Foss, 47 Mo. 276; Scovill v. Glasner, 79 Mo. 449; Coffman v. Walton, 50 Mo. App. 404; Springfield Engine & Thresher Co. v. Donovan, 147 Mo. 622.]

It is, however, contended that the only issue to be tried was "whether the writing produced be the will of the testator or not," and that evidence for the purpose of showing that plaintiffs had accepted the provisions of the will, and were, by reason thereof, estopped to deny its validity, was improperly admitted.

. It has uniformly been held by this court that an action to contest a will or establish one which has been refused admission to probate is an action at law (Swain v. Gilbert, 3

Mo. 347; Lyne v. Marcus, 1 Mo. 410; Young v. Ridenbaugh, 67 Mo. 574; McIlwrath v. Hollander, 73 Mo. 112; Lilly v. Tobbein, 103 Mo. 477), but it does not for that reason follow that error was committed in the admission of evidence showing that plaintiffs had accepted the provisions of the will— especially when by their replication to defendants' answer they admitted such to be the fact; and by reason thereof they are in no position to complain of that which in their pleadings they admit to be true.    Moreover, the question of estoppel was not submitted to the jury, and plaintiffs could not have been prejudiced by the admission of evidence with respect to matters which they admitted.

The next question presented by this appeal relates to the refusal of instructions numbered one and two asked by plaintiffs, and to the giving of the sixth instruction on the part of defendants.    The insistence is that J. P. Wood was for several years the confidential friend and legal adviser of the testator, to whom he also looked for legal advice with respect to other matters, which when obtained he followed implicitly, besides, he was the principal promoter, as well as stockholder and director of the cemetery association, and its legal adviser, and most active manager, and, that these facts raise a presumption of undue influence, which it devolved upon defendants to explain, by showing that the bequest to the cemetery association was the deliberate offspring of the testator's own unbiased mind; and not the result of that influence which is presumed to result from the relation of attorney and client.

We recognize the well settled rule which indulges the presumption that undue influence has been used, where a patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other close, confidential or fiduciary relationships exist.    This rule has for its basis some pecuniary benefit to be derived directly or indirectly under the will by the person or church or charity

represented by the person by whose influence the testator is influenced to make the will, and the cases chiefly relied upon by plaintiffs, namely, Garvin v. Williams, 44 Mo. 465; Harvey v. Sullens, 46 Mo. 147; Cadwallader v. West, 48 Mo. 502; Garvin v. Williams, 50 Mo. 206; Street v. Goss, 62 Mo. 226; Bradshaw v. Yates, 67 Mo. 228; Bridwell v. Swank, 84 Mo. 455; Gay v. Gillilan, 92 Mo. 250; Maddox v. Maddox, 114 Mo. 35; Carl v. Gabel, 120 Mo. 283, are of that character.

.But there was no evidence showing that Wood was the attorney for the testator at the time of the execution of the will, or that he ever had in fact been such except in the preparations of his wills. Mere general statements that he was, without more coming from persons who were not in position to know, amounted to nothing. While he was one of the promoters of the cemetery association he owned but one share therein, of but nominal value, and was not the legal adviser of the testator. Hence his position towards the testator did not bring him or the association within the rule announced, which raises the presumption of undue influence by the beneficiary who prepares it or procures its execution, so as to cast the burden upon defendants of showing that the bequest to the cemetery association was the result of a free and uninfluenced mind. As a general rule those who execute wills employ persons to draft them in whose ability to do so correctly they have confidence, and especially is this so when lawyers are employed, and it has never been held from that fact alone that the presumption arises that the will was obtained by undue influence of the draftsman.

There was therefore no error committed in refusing these instructions. Nor in giving the sixth instruction on the part of defendant which presented the converse view.

The fourth instruction given on the part of defendant is criticised upon the ground, that whether the testator knew the contents of the paper in controversy was not an issue in

the case, and even if it was, there was no presumption
that he knew its contents.   This objection is not without
merit.

There was no issue presented by the pleadings that justi-
fied it, and it was therefore outside of the case, and should not
have been given.

A final contention is that error was committed in giving
the fifth instruction on the part of defendants.   It is claimed
that this instruction assumed as a fact that the testator had
made a will, and that at the time of making it, he had sufficient
understanding and intelligence to transact his ordinary busi-
ness; and that he understood what disposition he was making
of his property, what property he owned, and to whom he was
giving it, and then told the jury that these facts were suffi-
cient to constitute a sound and disposing mind.   These facts
were put in issue by the pleadings, and, as the will had been
admitted to probate it devolved upon defendants to first prove
its formal execution and then the burden rested upon plain-
tiffs to prove these allegations, and as they introduced no sub-
stantial evidence tending to sustain them, and the evidence
adduced all tended to show mental capacity to make the will,
and the absence of undue influence in its procurement, the in-
struction was not erroneous in assuming them to be true.
[Bank v. Hatch, 98 Mo. 376; Walker v. City of Kansas, 99
Mo. 647; State v. Moore, 101 Mo. 316.]

The question then is should the judgment be reversed
because of the error committed in giving the fourth instruc-
tion on the part of defendants?   When an erroneous instruc-
tion to a jury is given, and the trial results in a verdict in
favor of the party at whose instance it is given, it will be pre-
sumed that the error was prejudicial (State v. Taylor, 118
Mo. 161; Morton v. Heidorn, 135 Mo. 608), and unless it
is clear that a different result could not have been reached by
the jury, without injustice to the party against whom the
verdict is rendered it should not be permitted to stand, but
notwithstanding an instruction may be faulty, if the conclu-

sion reached by the jury is manifestly right, and a different result could not have been reached by them without injustice, the verdict ought not on this account to be disturbed. [Noble v. Blount, 77 Mo. 239; R. S. 1889, secs. 2303, 2100; Haehl v. Railroad, 119 Mo. loc. cit. 344; Fox v. Windes, 127 Mo. 502; Macfarland v. Heim, 127 Mo. 327; Sherwood v. Street R'y, 132 Mo. 339.]

The testator was a man of more than ordinary intelligence, and quite successful in the pursuits which he followed. He conducted successfully up to the time of his death large farming interests, loaned money, and was for many years and at the time of the execution of the will, a director in the Ralls County Bank, at New London. While a number of witnesses testified that about the time of the execution of the will his memory was not as good as in former years, there was no evidence showing or tending to show that he did not know the objects of his bounty, what property he possessed, and what disposition he was making of it. He in person solicited the witnesses to the will, to attest it as such. Nor does it seem strange under the circumstances, that he organized the cemetery association and established a cemetery, and, caused to be set apart a block therein to be called "Barkley Block," for his interment, and that he provided in his will for the erection on said block of a modest monument to mark his resting place, under whose shadow his remains were to be deposited. He had no wife or descendants. And after having given about half of his estate to his relatives he became a public benefactor by bequeathing the balance for the purpose of a cemetery. There was no fraud or undue influence in the procurement of the will, and, if under the circumstances disclosed by the record, it could be set aside, upon the grounds alleged, the law which authorizes the execution of such instruments should be striken from our statute books, because ineffective and of no consequence.

The judgment is affirmed. *Gantt, P. J.,* concurs; *Sherwood, J.,* absent.