Opal GILLMORE, Beulah Bath, H. J. Arnhold, Malcolm Arnhold, Dora McEvers and Lucille Wilson, Appellants,

v.

H. M. ATWELL, Executor of the Last Will and Testament of Clara Jeffries, Deceased, R. F. Clotworthy, Julian Crane, K. P. Meyer, A. F. Berkstresser, B. H. Cantwell, Edwin Ford, Arthur Bear, Lynn Lupardus and H. L. Stephens, Trustees of the Methodist Church, of Eldon, Missouri, Respondents.

No. 44452.

Supreme Court of Missouri.

Division No. 2.

Nov. 14, 1955.

G. Logan Marr, Versailles, Leon P. Embry, California, for appellants.

Edwards, Hess & Collins, Macon, for respondents.

BOHLING, Commissioner.

Action in the Circuit Court of Miller county, Missouri, to contest the will of Clara Jeffries, deceased, on the grounds of testamentary incapacity and undue influence. The issue of undue influence was taken from the jury. The verdict sustained the will. Contestants appeal and contend error was committed in proponents' opening statement, the exclusion of certain evidence and, broadly, in refusing to submit the issue of undue influence.

Testatrix, the widow of John Jeffries, died April 27, 1953, being in her seventies. She lived at Eldon, Missouri. The will in contest was executed March 26, 1953, and, so far as material, devised and bequeathed to the Trustees of the Methodist Church of Eldon, Missouri, all of testatrix' estate after the payment of her just debts and the erection of a suitable marker at her grave. H. M. Atwell was appointed executor of the estate. Testatrix left surviving as her heirs at law one sister, Sophia Arnhold, and the descendants of two deceased brothers, Emil and William Arnhold. Six of the seven children of William Arnhold are the appealing contestants. Under a prior will, dated February 8, 1950, testatrix gave her estate, after the payment of debts, to nieces, nephews and grand nephews, contestants receiving three-fourths of the estate. Sophia Arnhold, although mentioned with affection, was not a beneficiary thereunder. She lived at Versailles, Missouri, survived testatrix but died prior to the trial. The contestants are residents of Colorado and Nevada.

■ Testatrix' estate was valued in excess of $25,000 and included real estate valued at $14,500. Title to real estate is involved and we have jurisdiction of the appeal. Proffer v. Proffer, 342 Mo. 184, 114 S.W.2d 1035, 1036 [2]; State ex rel. Pemberton v. Shain, 344 Mo. 15, 124 S. W.2d 1087, 1088 [6].

■ In his opening statement counsel for proponents stated that testatrix and her brothers and sisters, after the death of their parents, made an agreement that none would marry and they would keep the parents' property in the family; that testatrix married in violation of the agree-

ment, and that the result was hard feelings between testatrix and her relatives. Contestants' objection and motion, at the close of the statement, to declare a mistrial were overruled.

Contestants say they do not imply bad faith on the part of counsel for proponents. They claim, all the parties to the alleged agreement being dead, the statements called for hearsay testimony, and proponents' failure to attempt to prove the statements indicates there was no competent evidence establishing the statements, and the statements were prejudicial. Proponents say oral declarations of testatrix tending to support counsel's statements would have been admissible to show the state of her affections. Clark v. Crandall, 319 Mo. 87, 5 S.W.2d 383, 386 [5]; State ex rel. Smith v. Hughes, 356 Mo. 1, 200 S.W.2d 360, 361 [2]. Contestants' case of Cade v. Atchison, T. & S. F. R. Co., Mo., 265 S.W.2d 366, 370 [10, 11], is to the effect that the trial court may exercise a reasonable discretion in ruling on the propriety of opening statements and their prejudicial effect. Dees v. Skrainka Const. Co., 320 Mo. 839, 8 S.W.2d 873, 876 [1–4]; State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58, 61 [6], 124 A.L.R. 1331. The facts are so different in contestants' cases of Baker v. St. Louis Public Service Co., Mo., 269 S.W.2d 78, 87 [2, 3], and Glover v. Atchison, T. & S. F. R. Co., 129 Mo.App. 563, 575, 108 S.W. 105, 109, that they are not controlling. The contention is overruled.

Testatrix was gravely ill for some time prior to her death. She was at the home of Mr. and Mrs. Murray Jackson from February 6 to February 20, 1953. She was taken to the hospital of Dr. L. S. Humphreys, an osteopath, at Tuscumbia, Missouri, on February 20th and remained there until March 23, 1953, when she was released at her request and not because she was in need of no further treatment. Mrs. Eliza Abbett and Mrs. Ruth Davidson, practical nurses, attended her at the home. On April 7th she was taken to the Latham Hospital at California, where she remained un-

til April 15th. She was then returned to her home, where she was attended by Mrs. Davidson and Mrs. W. M. Waltersheide until her death.

It is sufficient for the purpose of this review on the issue of testamentary capacity to state: Proponents made formal proof of the execution of the will and testatrix' testamentary capacity. Contestants adduced testimony of testatrix' testamentary incapacity, including the testimony of Dr. Kenyon Latham, who attended testatrix between April 5 and 15, 1953, that testatrix suffered from progressive senile dementia and was not, in his opinion, of sound mind on March 26, 1953. Proponents adduced additional testimony of her testamentary capacity by a number of lay witnesses and a medical witness, Dr. Carl T. Buehler, Jr.

Contestants complain of the refusal of their offer of proof on the issue of testamentary incapacity that Dr. L. S. Humphreys would testify, based on his observations of testatrix while in his hospital, that she was not mentally capable of comprehending the nature and extent of her property, who her relatives and the natural objects of her bounty were, and to whom she wanted to give her property. This offer of proof was excluded on objections interposed that it tended to invade the province of the jury and involved the opinion of the witness on a question of law.

As stated by contestants the excluded testimony embodied legal prerequisites to one's testamentary capacity, Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135, 142 [11]; Baker v. Spears, 357 Mo. 601, 210 S.W.2d 13, 20 [14]; and in general competent testimony is admissible as to testamentary incapacity based upon observations not too remote to the execution of a contested will, Donnan v. Donnan, Mo., 264 S.W.2d 318, 326, 327; Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135, 141 [5]; Ambruster v. Sutton, 362 Mo. 740, 244 S.W.2d 65, 72 [1, 2]. Farr v. Lineberger, Mo., 207 S.W.2d 455, 459 [6, 7], was to cancel certain deeds and testimony adduced before the chancellor whether

grantor was capable of "'executing deeds or transacting business'" was excluded from consideration upon appeal.

As observed in Wigginton v. Rule, 275 Mo. 412, 449, 205 S.W. 168, 180 [5], our cases adhere to the rule announced by Faris, J., in Heinbach v. Heinbach, 274 Mo. 301, 202 S.W. 1123, 1131, that a lay or an expert witness "in a will contest case should not be permitted to invade the province of the jury by expressing his opinion on the very question the jury is to determine, to wit, the question of the mental capacity or incapacity of a person to make a will, as well as the several elements which go to make up such mental capacity, viz. 'mental capacity to comprehend who his children were, to understand the nature and extent of his property, and to know to whom he desired to give it.'" Rothwell v. Love, Mo., 241 S.W.2d 893, 896 [4]; Post v. Bailey, Mo., 254 S.W. 71, 74 [1]; Baptiste v. Boatmen's Nat. Bank, Mo., 148 S.W.2d 743, 744 [1], citing authorities; 2 Page on Wills, 548, § 790; 7 Wigmore on Evidence, 88, § 1958 and notes; 32 C.J.S., Evidence, § 535, page 252; 20 Am.Jur. 653, § 782; 57 Am.Jur. 122, § 129; Annotations, 155 A.L.R. 284 et seq.; 37 L.R.A.,N.S., 595 et seq. The cited texts and annotations indicate there is a divergence of rulings on the instant issue. Contestants' authorities, mentioned above, do not call for a departure from the rule announced in Wigginton v. Rule, supra, and the point is disallowed.

■ Testatrix' will is short, having been typewritten on a single sheet of paper. Contestants also claim error in the rejection of their offer to prove by Dr. L. S. Humphreys that, based on his observations of testatrix while in his hospital, testatrix was not mentally capable of reading the alleged will or hearing it read and, by the time the end of it was reached, of remembering what was in it and understanding the entire document. Contestants cite the same authorities in support of this contention as are cited in support of the point last discussed. The issues call for like rulings. The instant inquiry went to testatrix' capacity to execute the will in con-

test. See Fields v. Luck, Mo., 44 S.W.2d 18, 21.

■ Contestants contend the issue of undue influence was for the jury. Contestants' petition alleged and contestants' trial theory was that the will making the church the beneficiary was the result of undue influence exercised over testatrix by her pastor, Reverend E. E. Barnes.

The contestants frankly state there was no direct evidence of undue influence; but they contend the evidence was sufficient to raise the necessary inference requiring its submission to the jury. They rely upon evidence to the following effect:

Testatrix had been a member of the beneficiary church for many years and a regular attendant at the church and its functions. Rev. Barnes had been pastor of the church since September, 1951, his salary being paid by the church. He visited testatrix frequently at her home, and at the Humphreys hospital, particularly after her second or third week there, and after her return home on March 20, 1953, twice daily for several days. He testified he was testatrix' spiritual and religious adviser.

Dr. L. S. Humphreys testified that while testatrix was at his hospital Rev. Barnes inquired of him whether testatrix had mental capacity to make a will. Rev. Barnes testified he visited testatrix at the Humphreys hospital February 21st and she then told him there would be "about $2,000 for the church"; that about two or three weeks later at the hospital she told him: "I think that there will be about $10,000 for the church"; and that, a few days later at the hospital testatrix told him "whatever was left after her bills was paid would be given to the Methodist church." He testified that he told Mr. Atwell that testatrix had said there would be about $2,000 for the church; and that on March 25th, the day before the will was executed, he, of his own volition, talked to Mr. Atwell "about a new will being presented to her" which would give all of testatrix' property, after the payment of obligations, to the Methodist church of Eldon, Missouri.

Rev. Barnes testified that he was at testatrix' home on March 26, 1953, in the morning and again when the will was signed; that testatrix did not say anything to him about making a new will that day; that, nevertheless, as his own idea and of his own volition, he asked Irene Fitzgerald to come to Mrs. Jeffries' home that day and be a witness but she declined, and that, without suggestion from testatrix he arranged for Mrs. Ruby Clotworthy (the wife of one of the trustees of the Methodist church) to be present and act as a witness. Mrs. Clotworthy testified that she made a social call on testatrix earlier on March 26, 1953, and testatrix at that time did not say anything to her about a will or being a witness to a will; that after leaving testatrix she stopped at Rev. Barnes' home and he told her there was a will to be signed and asked her to go back to testatrix' home and act as a witness.

Rev. Barnes also asked Trustees Julian Crane and Kelvin Meyer of the Methodist church to be present at testatrix' home when the will was executed. He informed Dr. Carl T. Buehler, Jr., that it was planned that testatrix would sign a paper that day supposed to be her will and requested him to come and examine testatrix as to her mental condition. He accompanied Dr. Buehler to testatrix' home about 9 p. m. that evening.

We also mention: The following were present when Mrs. Jeffries executed the will in contest at about 5 p. m. March 26, 1953. The scrivener, H. M. Atwell; the pastor, Rev. Barnes, and two trustees, Julian Crane and Kelvin Meyer, of the Methodist church; the two witnesses to the will, Mrs. Ruby Clotworthy and Mrs. Golda M. Jones; and Mrs. Eliza Abbett, the nurse in attendance upon testatrix. Mr. Atwell went into testatrix' bedroom and closed the door. He testified for the proponents that he went over the will with testatrix and that she approved it. He then opened the door and asked Mrs. Jones and Mrs. Clotworthy to come in. Rev. Barnes testified that he followed the witnesses into testatrix' bedroom and observed the signing of the will.

Sophia Arnhold, accompanied by Miss Luenda Bauer and others, went to testatrix' home about 9 p. m. March 25, 1953, in response to a message delivered at testatrix' instance. There was testimony that testatrix was bedfast and did not know her sister when she arrived, and that she told them the Methodists were begging her to leave all her property to the church. Miss Bauer, after narrating some statements made by testatrix that evening, testified she was of the opinion testatrix was not of sound mind. On March 26, 1953, Sophia Arnhold filed an information charging that testatrix was of unsound mind and incapable of managing her affairs. This information was served upon testatrix about the noon hour, and there was testimony for proponents to the effect that testatrix was hurt by this action of her sister and incensed over it.

Proponents first say the clergyman was not a beneficiary under the communicant's will and the inference does not arise.

At the time Lane v. St. Denis Catholic Church, Mo.App., 274 S.W. 1103, 1105, was decided there were statements in earlier cases, like the case therein cited of Mowry v. Norman, 204 Mo. 173, 189, 190, 103 S.W. 15, 18, 19, that a mere confidential relationship raised a presumption of undue influence; but this statement in Mowry v. Norman and like statements in other cases were overruled by court en banc in Lochr v. Starke, 332 Mo. 131, 145, 56 S.W.2d 772, 778, where it is held (loc. cit. 144 and 777 respectively) the presumption rests upon three facts: "'First, the fiduciary relation; second, the gift or devise to, or in the interest of the guardian; third, an opportunity for an exercise of undue influence.'" Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400, 409, states the presumption of influence does not arise "unless, in addition to proof of the fiduciary relation and of a benefaction to or in the interest of the fiduciary, there be further facts and circumstances in evidence from which it can be inferred that the fiduciary beneficiary was active in some way which caused or assisted in causing the execution of the will."

Lane v. St. Denis Catholic Church, supra [274 S.W. 1105], was ruled under the theory that the showing of a fiduciary relationship shifted the burden of going forward with the evidence, and what is there said supports proponents' position upon a showing of activity by the fiduciary under the later rulings; to wit: "If the testatrix had left her property to the priest, charged with exercising the undue influence, the principle advocated by plaintiffs would be tenable. The property, however, was left to the church, and not to the priest. While the priest may have had a very deep interest in the church, the bequest to the church would not be a gift to him, and consequently the presumption of undue influence does not apply, granting a confidential relationship did exist."

A statement to like effect is in McGirl v. Wiltz, Mo.App., 148 S.W.2d 822, 824, 829: "In the case of the will in question, it is significant that neither Wiltz, nor Fahey, nor the then pastor of the church, was made a beneficiary, so that no one of such persons stood to profit individually by the terms and provisions of the will as finally executed." Other rulings, by analogy, support proponents' position. Webster v. Leiman, 328 Mo. 1232, 44 S.W.2d 40, 41 [3]; Baker v. Spears, 357 Mo. 601, 210 S.W.2d 13, 19 [7].

It is stated in 2 Page on Wills, 655, § 840: "No presumption of undue influence arises where testator makes a gift for religious purposes with which the spiritual adviser of such testator is closely connected. [Citing authority.] Where the clergyman refused to draw a will for testator by which he left a large part of his property to such church, no presumption of undue influence arises out of the fact that the clergyman was present at execution; and the case should not be submitted to the jury in the absence of further evidence"; citing Tibbe v. Kamp, 154 Mo. 545, 579, 54 S.W. 879, 889, 55 S.W. 440. In accord, 57 Am.Jur. 288, § 402.

Tibbe v. Kamp was before court en banc and, as in the instant case, there was no direct evidence of the exercise by the pastor of undue influence over the testator. That case presented a much stronger set of facts for the contestants than does the instant record. Testator left a considerable estate, due to the guidance and efforts of his son. He was on most affectionate terms with his wife and son. His will gave one-half of his estate to his church and its institutions. The court recognized the exception as it then stood shifting the burden to a beneficiary receiving substantially all of testator's property when a confidential relationship existed between the testator and the beneficiary, such as a communicant and a priest; but the court held a prima facie case of undue influence had not been established, and reversed outright a judgment setting aside testator's will for the exercise of undue influence by the pastor. Valliant, J., dissented, considering the will unnatural and presumed to be the result of undue influence, a jury question. Two judges voted dubitante.

Contestants state in their brief:

"Bearing in mind that undue influence in favor of religious organizations can be exercised only through individuals (Hegney v. Head, 126 Mo. 619, 629, 29 S.W. 587, 589, 590; Klaber v. Unity School of Christianity, 330 Mo. 854, 862, 51 S.W.2d 30, 32), we submit that the evidence was sufficient to raise the presumption or inference of undue influence and to make that an issue for the jury.

"In Barkley v. Barkley Cemetery Ass'n, 153 Mo. 300, 315, 54 S.W. 482, 485, 486, this Court says:

" 'We recognize the *well-settled* rule which indulges the presumption that undue influence has been used where a patient makes a will in favor of his physician, a client in favor of his lawyer, a ward in favor of his guardian, or any person in favor of his priest or religious adviser, or where other close, confidential, or fiduciary relationships exist. This rule has for its basis some pecuniary benefit to be derived, directly or indirectly, under the will, by the person, *or church,* or charity represented by the person by whose

influence the testator is influenced to make the will * * *.' (Emphasis ours.)

"The basis for that rule, as stated in the Barkley case, appears to be quoted approvingly in Cornet v. Cornet, 248 Mo. 184, 234, 154 S.W. 121, 137 [8], and the rule stated in the Barkley case appears to be approved in Roberts v. Bartlett, 190 Mo. 680, 702, 89 S.W. 858, 863."

Contestants' cases do not present factual situations where the church was and the fiduciary-pastor was not a beneficiary. The will in the Hegney case was interpreted by the pastor as making a gift to him. The fiduciaries in the Klaber case were considered to be direct or indirect beneficiaries of the gift. In the Barkley case the court considered a fiduciary relation did not exist between the attorney-scrivener and testator. In the Cornet case a trustee was the grantee of a spendthrift trust, and there was direct evidence on the issue. In the Roberts case the fiduciary-scrivener was testator's agent in important financial transactions, his confidential friend and adviser, and the facts presented a much stronger case for the contestants.

Under proponents' cases, including the majority holding of court en banc in Tibbe v. Kamp, supra, in the light of the change effected in the law by Loehr v. Starke, supra, an inference of undue influence did not arise from the clergyman's activities in connection with his communicant's will, the church, and not the clergyman, being the beneficiary. Contestants do not discuss the law announced in proponents' authorities. They do not undertake to demonstrate that proponents' cases should be reviewed and our course differently charted. The presentation does not establish reversible error.

Complaint is made of the refusal of certain offers of proof by contestants on the ground the testimony was evidence of "activity" on the part of Rev. Barnes and was pertinent to contestants' case for raising an inference of undue influence. The offers of proof did not involve any direct evidence of an exercise of undue influence by Rev. Barnes over testatrix; and what we have said calls for a ruling that prejudicial error is not shown.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court.

All concur.